GERTRUDE KULP BAESLER, INDIVIDUALLY AND AS GUARDIAN *AD LITEM* OF BERNARD KULP, PLAIN-TIFFS-APPELLANTS, v. GLOBE INDEMNITY CO., A CORPORATION OF THE STATE OF NEW YORK, AUTHORIZED TO DO BUSINESS IN NEW JERSEY, DEFENDANT-RESPONDENT.

Argued May 9, 1960—Decided June 28, 1960.

*Mr. Vincent E. Hull* argued the cause for the plaintiffs-appellants.

*Mr. Samuel Doan* argued the cause for the defendant-respondent (*Mr. Charles C. Stalter,* attorney; *Mr. Aaron Dines,* on the brief).

The opinion of the court was delivered by

PROCTOR, J. This case presents a question of coverage under the omnibus clause of an automobile liability insurance policy issued by the defendant company. The facts were stipulated.

In March 1957 the defendant company issued the policy in question to John Ranaletti as the named insured. The policy was in effect at the time of an accident in February 1958, and covered an automobile involved in the accident that was owned by Ranaletti and driven at the time by Robert Tureckie. Under the terms of the policy, the defendant company extended coverage for liability to Ranaletti, as the named insured, to any resident of his household, and to "any other person using such automobile provided the actual use thereof is with the permission of the named insured * * *."

When the insured automobile was bought by Ranaletti, he immediately turned it over to his nephew, George Rogers, a member of his household under 21 years of age, for Rogers' exclusive use. At the same time, "Rogers was expressly prohibited by the named insured from permitting other people to use said vehicle." Down to the date of the accident, Rogers used the automobile "for his pleasure."

At the time of the accident involving the automobile, Robert Tureckie was driving it "with the express consent and permission of George Rogers." Rogers lent Tureckie the automobile with knowledge that Tureckie was to use it for a social engagement, and with knowledge that Bernard Kulp was to accompany Tureckie. "Aside from this favor to Tureckie there was no advantage or benefit to either Rogers or the named assured in this use of the car by Tureckie, except insofar as this use served Rogers' pleasure."

In the accident that occurred while Tureckie was driving the car, Bernard Kulp was injured. The defendant company

disclaimed liability and did not defend Tureckie in an action brought against him by Gertrude Kulp Baesler, individually, and as guardian *ad litem* of Bernard Kulp, for damages for the latter's personal injuries. Judgment was entered in that action against Tureckie in the total amount of $3,177.75. In the present action Gertrude Kulp Baesler, in the same capacity, seeks to recover the amount of the judgment from the defendant company, asserting that Tureckie was an additional insured under the terms of the aforementioned liability policy.

In the Superior Court, Law Division, summary judgment was granted the defendant company on the facts stipulated. On the plaintiffs' appeal, the Appellate Division unanimously affirmed. 57 *N. J. Super.* 386 (1959). The case is here on petition for certification granted. 31 *N. J.* 551 (1960).

It is a well-established general rule that when the named insured gives another permission to use his insured automobile, without more, the permittee is not thereby authorized to allow another to use it. And if he does, the second permittee's use is not "with the permission of the named insured," as those words are used in a comprehensive liability policy. *Cronan v. Travelers Indemnity Co.,* 126 *N. J. L.* 56 (*E. & A.* 1941); *Standard Accident Ins. Co. v. New Amsterdam Cas. Co.,* 249 *F.* 2d 847 (7 *Cir.* 1957); *Aetna Cas. & Surety Co. v. DeMaison,* 213 *F.* 2d 826 (3 *Cir.* 1954); *United Services Automobile Ass'n v. Preferred Accident Ins. Co.,* 190 *F.* 2d 404 (10 *Cir.* 1951); *Fox v. Crawford,* 50 *Ohio Law Abst.* 553, 80 *N. E.* 2d 187 (*Ohio Ct. App.* 1947); *Boyer v. Massachusetts Bonding & Ins. Co.,* 277 *Mass.* 359, 178 *N. E.* 523 (*Sup. Jud. Ct.* 1931); 7 *Appleman, Insurance,* § 4361 (1942); *Annotation* 160 *A. L. R.* 1195, at *p.* 1210 (1946).

The rule is subject, however, to a broad qualification in terms of the scope of the named insured's initial grant of permission. The factual determination must be made, in every case where the first permittee permits another to use the insured automobile, whether the initial grant of

permission was broad enough to include an implied grant to the permittee of authority to give another use of the automobile and thus to render the latter an additional insured under the omnibus clause of the policy. *Costanzo v. Pennsylvania Threshermen, etc., Ins. Co.*, 30 N. J. 262 (1959); *National Grange Mut. Liability Co. v. Metroka*, 250 F. 2d 933 (3 Cir. 1958); *Utica Mut. Ins. Co. v. Rollason*, 246 F. 2d 105 (4 Cir. 1957); *United Services Automobile Ass'n v. Preferred Accident Ins. Co., supra; Boyer v. Massachusetts Bonding & Ins. Co., supra; 7 Appleman, Insurance,* § 4361 (1942).

Thus, it is almost universally held in the modern cases that where the named insured grants his permittee broad and unfettered dominion over his insured automobile, he also impliedly authorizes his permittee to allow a third person to use it, and thus to render him an additional insured. *Costanzo v. Pennsylvania Threshermen, etc., Ins. Co., supra; National Grange Mut. Liability Co. v. Metroka, supra; Utica Mut. Ins. Co. v. Rollason, supra; Indiana Lumbermens Mut. Ins. Co. v. Janes*, 230 F. 2d 500 (5 Cir. 1956); *Pennsylvania Thresherman, etc., Ins. Co. v. Crapet*, 199 F. 2d 850 (5 Cir. 1952); *State Farm Mut. Auto Ins. Co. v. Porter*, 186 F. 2d 834, 52 A. L. R. 2d 515 (9 Cir. 1950), rehearing denied 186 F. 2d 844 (9 Cir. 1951); *Robinson v. Fidelity & Cas. Co.*, 190 Va. 368, 57 S. E. 2d 93 (Sup. Ct. App. 1950); *Perrodin v. Thibodeaux*, 191 So. 148 (La. Ct. App. 1939). Contra, *Samuels v. American Automobile Ins. Co.*, 150 F. 2d 221, 160 A. L. R. 1191 (10 Cir. 1945). The first permittee, by being granted complete dominion over the insured automobile, is put in the shoes of the named insured, and therefore his permittee is held to be the named insured's permittee. *Hinchey v. National Surety Co.*, 99 N. H. 373, 111 A. 2d 827 (Sup. Ct. 1955).

Implied authority to delegate the use of the insured automobile may be gathered not only from the scope of the initial permission but also from the subsequent conduct of the named insured and his permittee. *Boyer v. Massachusetts*

*Bonding & Ins. Co., supra; United Services Automobile Ass'n Co. v. Preferred Accident Ins. Co., supra; Holthe v. Iskowitz,* 31 *Wash.* 2d 533, 197 *P.* 2d 999 *(Sup. Ct.* 1948); *Odden v. Union Indemnity Co.,* 156 *Wash.* 10, 286 *P.* 59, 72 *A. L. R.* 1363 *(Sup. Ct.* 1930). *Cf. Trotter v. Union Indemnity Co.,* 35 *F.* 2d 104 (9 *Cir.* 1929).

In the present case, however, where the named insured expressly forbade his permittee to allow others to use his automobile, and where there was no conduct thereafter that could be interpreted as a grant of authority to allow others to use it, there is no room for a finding of implied authority. However liberally we may wish to read the insurance policy in favor of coverage, there is no way to hold that the second permittee was using the automobile "with the permission of the named insured" short of ignoring the meaning of those words. Our consideration of the present case is limited by the facts as they were stipulated by the parties, presumably after a careful and intelligent appraisal of the circumstances. We are not confronted with the necessity or the opportunity of evaluating the nuances of oral testimony, or the inferences to be drawn therefrom. Rather, we are enjoined to deal solely with the bald stipulated fact that the named insured expressly prohibited his permittee from allowing another to use the insured automobile.

A different case would be presented where the named insured expressly forbade his permittee to allow anyone else to *operate* the insured vehicle, and contrary to these instructions the permittee allowed another to drive, but the *purpose* to which the vehicle was being put was within the scope of the initial permission. Such would be the case, for instance, where a father permitted his son to use the car for social engagements, and, while "double-dating," the son, contrary to his father's orders, turned the wheel over to a fellow occupant. In those situations it has been held that even though the car was being *operated* contrary to the named insured's initial grant of permission, yet the driver is an additional insured because the *use* of the car was an

authorized one. *Loffler v. Boston Ins. Co.*, 120 *A. 2d* 691 (*D. C. Mun. Ct. App.* 1956); *Brooks v. Delta Fire & Cas. Co.*, 82 *So. 2d* 55 (*La. Ct. App.* 1955). See *Arcara v. Moresse*, 258 *N. Y.* 211, 179 *N. E.* 389 (*Ct. App.* 1932). *Contra, Prisuda v. General Cas. Co. of America*, 272 *Wis.* 41, 74 *N. W. 2d* 777 (*Sup. Ct.* 1956).

The reasoning of those cases has no application here. Rogers was expressly forbidden to allow others to *use* the automobile. Yet he allowed Tureckie to use it for the latter's own personal business. Rogers was not a passenger in the car, and there was no benefit running to him other than the suggestion that Tureckie's use "served Rogers' pleasure." If this were enough to overcome an express prohibition by the named insured, the prohibition could be nullified by the permittee, whenever such a course served his pleasure, simply by the expedient of ignoring it. Except in case of duress, one never permits another to use an automobile unless some degree of pleasure or advantage is expected from the loan.

We are unable to hold that Tureckie's forbidden use of the Ranaletti automobile in these circumstances rendered him an additional insured. To do so would be to infer an intent that is utterly inconsistent with a clearly expressed prohibition, and to disregard the clear and simple words of the insurance policy. Neither our own research nor that of counsel has turned up a single case holding that a second permittee, who uses an insured automobile for his own purposes, unaccompanied by the first permittee, and against the express instructions of the named insured as to use, is nonetheless using the automobile with the permission of the named insured. See *Farmer v. Fidelity & Cas. Co.*, 249 *F. 2d* 185, at *p.* 188 (4 *Cir.* 1957); 26 *Insurance Counsel Journal* 262, at *p.* 263 (1959). Every case that we have found in other jurisdictions is to the contrary and supports our conclusion. *Carlton v. State Farm Mut. Automobile Ins. Co.*, 309 *P. 2d* 286 (*Okla. Sup. Ct.* 1957); *Hopson v. Shelby Mut. Cas. Co.*, 203 *F. 2d* 434 (4 *Cir.*

1953); *Norris v. Pacific Indemnity Co., 39 Cal. 2d 420, 247 P. 2d 1 (Sup. Ct. 1952); Clemons v. Metropolitan Cas. Ins. Co., 18 So. 2d 228 (La. Ct. App. 1944); Dodson v. Sisco, 134 F. Supp. 313 (D. C. W. D. Ark. 1955).* See *Farmer v. Fidelity & Cas. Co., supra; Cocos v. American Automobile Ins. Co., 302 Ill. App. 442, 24 N. E. 2d 75 (Ct. App. 1939). Cf. Arcara v. Moresse, supra.* See also *Annotation 160 A. L. R., 1195 at p. 1206 and 1209 (1946); Annotation 5 A. L. R. 2d 600, at p. 657 (1949); 5A Am. Jur., Automobile Insurance, § 96 (1956).*

The defendant company receives premiums in return for its agreement to insure any person driving the insured automobile, just so long as the use is with the permission of the named insured. It may seem odd, in these circumstances, that the defendant company should be able to withdraw its protection solely on the basis of an avuncular admonition that in all probability was made without any thought of insurance coverage. The public interest might be better served if comprehensive liability policies were written to cover every driver of an insured automobile, without regard to intra-familial instructions given by laymen unfamiliar with insurance law. But they are not so written. And such arguments must be addressed to the Legislature, whose power to protect the public in this area far exceeds ours.

At the present time, New Jersey's Motor Vehicle Security-Responsibility Law is satisfied by a liability policy that covers any person using the insured automobile "with the express or implied consent of the insured." *L. 1952, c. 173, §§ 24–26, N. J. S. A. 39:6–46–48.* Until the Legislature chooses to set a higher standard, we cannot. The liberal construction that we give to insurance contracts in favor of coverage cannot go to the extent of refusing to give effect to their legally-unforbidden terms. The insurance contract in question contains a limitation of coverage that looks to the named insured's instructions as to the use of the insured automobile. However we may view this limitation in terms of

the protection of the injured public, we are not at liberty to ignore it.

Affirmed.

WEINTRAUB, C. J. (dissenting). People contract for results, presumably sensible ones. Words are mere vehicles to convey their intention. Perfect expression is rare, particularly in the composition of a general covenant when the draftsman can not foresee all cases which may call it into play. In such situations we should be careful lest we be so absorbed in the letter that we miss the purpose. I do not suggest a judge should make a better contract. Rather my point is the familiar one that literal interpretation is misinterpretation if it leads to consequences which surprise the parties.

The "omnibus clause" here provides with respect to the "owned automobile" that the persons insured are "the named insured and every resident of the same household" and "any other person using such automobile, *provided the actual use thereof is with the permission of the named insured."* We are concerned with this italicized proviso. We know from reported cases that the contracting parties could not have contemplated every twist and turn and delineated in advance their understanding as to each. In the nature of the subject, broad and fluid terminology had to be employed. If we are to implement the intention of the parties we must seek the reason for the proviso and be guided by it rather than by a detached appraisal of words.

The named insured bought and paid for the protection of others who might drive his car. Conspicuous and dominating is the fact that the named insured was vested with plenary authority to determine who shall be the beneficiaries of the contract. Whether he "permitted" one or a hundred, and did so wisely or foolishly, the premium rate remained the same. He could empower his permittee to permit others to drive. *Annotation* 160 *A. L. R.* 1195, 1206 (1946). In short the carrier was paid for an agreement that the named

insured could extend the policy coverage to whomever he pleased, so long as no other provision of the policy was offended.

It is in the light of that central fact that we should search for the reason for the proviso in question. Since the named insured's authority to extend the coverage is unlimited, the restriction upon it should sensibly be construed to exclude *only those whom the named insured would not want to benefit.* What is the area of exclusion? A covenant which in terms protected all who might drive the vehicle would go beyond the purpose of the named insured. Specifically, he would have no desire to buy protection for a stranger who might make off with his car. To that end, it would be appropriate to cast the proviso in the very language before us. I think the proviso should be limited to essentially that situation. The carrier having written the provision, it should not be heard to advance a construction disserving the insured as against an admissible interpretation which will advance his interests. *Rikowski v. Fidelity & Casualty Co.,* 117 *N. J. L.* 407, 410 (*E. & A.* 1937). The ultimate question should be whether under the circumstances the named insured wanted to deny policy protection. We should not dwell upon the niceties of "permission" and thereby exclude persons whom the named insured sensibly would want to protect.

Let me illustrate. Suppose a close friend or relative in need of immediate transportation should take the car under a well-founded assumption that the named insured would readily agree if he could be reached. Literally there would be no "permission" in advance of the use, and if we were oblivious to the probable purpose of the parties, coverage would be excluded. Or suppose the named insured, for the purpose of disciplining his erring son (not a member of the household and hence protected, if at all, by the clause before us) denies him the use of the car for 30 days or during certain hours of the day. I think it would be absurd to hold the son who violated the prohibition was beyond the

protection of the policy. That is the last thought the father would have had in mind. In brief the named insured may deny or restrict "permission" for reasons wholly foreign to insurance coverage and with no intention whatever to deny the policy protection he bought. The carrier should not be permitted to make capital of such privately motivated actions.

Here, insofar as the rather summary stipulation of facts is revealing, the named insured purchased the automobile for the exclusive use of his nephew. To all intents and purposes, the car was the nephew's. It is fair to assume that when the nephew "was expressly prohibited by the insured from permitting other people to use said vehicle," the named insured was merely admonishing the nephew, perhaps to the end that his investment in the vehicle might be better preserved. There is nothing in the stipulation to suggest the uncle intended to bail out the insurance carrier if his familial instruction should be violated. We can well assume what his answer would have been had the question been put to him before the car was loaned. And I see no reason why the named insured may not answer that very question after the event. Even a literal reading of the proviso would not prevent the named insured from forgiving breaches of his instructions or ratifying the unauthorized act of his nephew. *Cf. United Services Automobile Ass'n v. Russom,* 241 *F. 2d* 296, 299 (5 *Cir.* 1957); but see *Johnson v. State Farm Mutual Automobile Ins. Co.,* 194 *F. 2d* 785 (8 *Cir.* 1952). It is no answer merely to say that the rights of the carrier have intervened and may not be altered by later actions of the insured. That answer would beg the question. Since the named insured is vested with plenary power to determine who shall benefit under the contract, it should not matter whether the named insured's approval preceded or followed the use of the car. The named insured's interest in affording that protection is no less after than before the event. To deny the authority of the named insured to forgive or to ratify is to visit consequences he surely did not want. Here the nephew is left in an awkward situation,

to say the least. His friend may not readily forgive him for the loan of an uninsured automobile. Indeed the friend may conclude the nephew should legally respond for the judgment entered against him. I of course intimate no view of the outcome of such a suit, but an action to that end would not be absurd even if it failed. And if perchance such a suit and a plaintiff's judgment therein were held beyond the policy coverage, no one could doubt the carrier would have escaped for reasons wholly fortuitous as to it. Surely the uncle intended no such wrath to befall his nephew. He doubtless had some other sanction in mind if his instruction were disobeyed.

And what I have just said suggests still another basis for coverage even upon a narrow view of the proviso. The uncle turned the car over to the nephew for the latter's exclusive use. It could be found that he thereby clothed the nephew with the appearance of authority to engage in so ordinary a transaction as a loan of the car to a friend. If in such circumstances the uncle sued the driver for conversion or trespass, I think he could not assert his secret restriction in the face of the appearances he created. The carrier should not be able to deny permission if the named insured is estopped to dispute it. Permission should be determined objectively, and the basis for that determination should be the circumstances the named insured created as they appeared to the driver. Permission, found in facts raising an estoppel to deny it, is well within the contract even if it be most technically viewed.

The interpretation advanced by the carrier departs from the common sense of the situation. More than that, it lends itself to frauds upon the subsequent permittee. A named insured untutored in law and fearful that his consent might lead to his own liability for the damages in excess of the policy limits (indeed by statute in some jurisdictions he would be so liable) may well be tempted to invent a claim that he prohibited others to drive or to convert a precatory request into a binding prohibition. Still further, we should

be mindful of the victim of the driver's negligence, for while he may be a remote beneficiary in the thinking of the named insured, yet the Legislature has been solicitous of his plight. I refer of course to the Financial Responsibility Law which provides that a required policy shall cover "any other person using or responsible for the use of any such motor vehicle with the express or implied consent of the insured." *L.* 1952, *c.* 173, § 24; *N. J. S. A.* 39:6–46(*a*); *Saffore v. Atlantic Casualty Ins. Co.,* 21 *N. J.* 300, 309 (1956). I understand the statute is not claimed to be applicable in this case, but what we hold here may conceivably influence our approach to the statutory provision. In any event we should prefer a construction of the proviso which will protect the victim while simultaneously enforcing the probable purpose of the contracting parties. See *Costanzo v. Pennsylvania Threshermen, etc., Ins. Co.,* 30 *N. J.* 262, 268 (1959).

Although many reported decisions support the technical and unrealistic interpretation here advanced by defendant, there is evidence of judicial determination to reach a common sense result. Thus for example it has been held that where the permittee deviates from a prescribed route or otherwise violates restrictions upon the use permitted, the policy nonetheless covers. *Costanzo v. Pennsylvania Threshermen, etc., Ins. Co., supra* (30 *N. J.,* at *p.* 268); *Rikowski v. Fidelity and Casualty Co., supra* (117 *N. J. L.* 407). So also it has been held that if the *use* is permitted it is of no moment that a restriction with respect to the identity of the operator is violated. *Hardware Mutual Casualty Co. v. Mitnick,* 180 *Md.* 604, 26 *A.* 2d 393 (*Ct. App.* 1942); *cf. Loffler v. Boston Insurance Co.,* 120 *A.* 2d 691 (*D. C. Mun. Ct. App.* 1956); *Brooks v. Delta Fire & Casualty Co.,* 82 *So.* 2d 55 (*La. App.* 1955); *Arcara v. Moresse,* 258 *N. Y.* 211, 179 *N. E.* 389 (*Ct. App.* 1932). It should follow that the driver would be covered in that situation since the provision before us protects "any other person using such automobile, provided the actual use thereof is

with the permission of the named insured." If the proviso is thus satisfied, there is no basis to deny protection to the operator for he is embraced by the language which precedes it. Those cases reach sound results but to find the *use* continued to be permitted notwithstanding disregard of expressed restraints or limitations seems to me a strained exercise in semantics. I think it better to find the true purpose of the proviso, and having done so, then to say the intention of the parties would be defeated if the carrier could seize upon limitations or restrictions the named insured expressed for reasons wholly unrelated to insurance protection. But if I followed the reasoning of the cases just cited, I would nonetheless find for the plaintiff, for the stipulation of facts states the car was given the nephew for "his exclusive use, * * * was used generally by George Rogers [the nephew] for his pleasure" and "Aside from his favor to Tureckie [the nephew's permittee] there was no advantage or benefit to either Rogers or the named insured in this use of the car by Tureckie, except insofar as this use served Rogers' pleasure." The stipulation could well have been more factual and less conclusional throughout, but still, taking the words the parties accepted, the *use*, being in furtherance of the pleasure of the nephew, remained a permitted one notwithstanding a breach of the restriction upon the identity of the operator. It may seem at first that this conception of "pleasure" is rather attenuated but reflection should suggest that friendships are furthered by such favors and favors are reciprocated. Moreover, the pleasure of the nephew would hardly be furthered by the unpleasantness to which I referred earlier and which the driver may well direct at the nephew for favoring him with an uninsured vehicle. All of which is another way of saying the uncle, although for purely personal reasons he admonished or restricted his nephew, never intended the penalty for a violation to be a loss of insurance coverage with unhappy consequences upon the nephew he wanted to benefit.

I would therefore reverse the judgment.

Mr. Justice JACOBS and Mr. Justice SCHETTINO join in this dissenting opinion.

*For affirmance*—Justices BURLING, FRANCIS, PROCTOR and HALL—4.

*For reversal*—Chief Justice WEINTRAUB, and Justices JACOBS and SCHETTINO—3.