73 N.J. Super. 407 (1962)
180 A.2d 168
ALLSTATE INSURANCE COMPANY, A CORPORATION OF THE STATE OF ILLINOIS, ETC., PLAINTIFF-APPELLANT,
v.
THE FIDELITY & CASUALTY COMPANY OF NEW YORK, A CORPORATION OF THE STATE OF NEW YORK, ETC., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 8, 1962.
Decided March 30, 1962.
*409 Before Judges GOLDMANN, FREUND and FOLEY.
Mr. John J. Gaffey argued the cause for appellant (Messrs. Gaffey & Webb, attorneys; Mr. Aaron Dines, of counsel).
Mr. John F. Ryan argued the cause for respondent (Messrs. Ryan, Saros, Davis & Stone, attorneys; Mr. Bernard L. Davis, on the brief).
The opinion of the court was delivered by FOLEY, J.A.D.
This is an appeal by plaintiff (Allstate) from a declaratory judgment entered in the Law Division in favor of the defendant (Fidelity). The case was tried without a jury.
On December 18, 1958 an automobile owned by Peter Petruzela and "driven" by a 15-year-old boy, Ronald P. Marsch, mounted a curb and struck a pedestrian, Martin P. Ryan, severely injuring him.
Fidelity insured the Petruzela car; Allstate insured a vehicle owned by Paul F. Marsch, father of Ronald. Both policies contained omnibus clauses, that of Marsch granting coverage where the insured (or additional assured) was involved in an accident while operating a vehicle other than that insured.
Ryan brought a negligence action against Petruzela (who was not in the car at the time of the accident), his son *410 Peter, Jr., to whom Petruzela had loaned the vehicle, and who was in the car, and Marsch.
When Marsch was served with process, Allstate forwarded it to Fidelity demanding that (1) Fidelity accept Ronald P. Marsch as an additional assured under the policy Fidelity had issued to Petruzela, and (2) Fidelity furnish Marsch with a defense in accordance with the policy terms. Fidelity rejected this demand and returned the process to Allstate. Allstate then assumed the defense of Marsch.
Subsequently, the present action was commenced, and later consolidated with the negligence case. The relief sought by Allstate is a judicial declaration that (1) Ronald P. Marsch is an additional insured under the policy of Fidelity; (2) Fidelity is obligated to provide Ronald P. Marsch with a defense in the negligence action; (3) Fidelity is obligated under the policy it issued to Petruzela to pay any judgment entered against Ronald P. Marsch in the negligence case; and (4) Fidelity is obligated to reimburse Allstate for the costs, expenses and counsel fees incurred by Allstate in the investigation and defense of Ronald P. Marsch in the negligence case.
The portion of the pretrial order relating to the declaratory judgment action defines the sole legal issue between the parties thus:
"7B. Between Allstate and Fidelity, the legal issue is whether defendant Ronald Marsch was an additional insured under the Fidelity policy issued to Petruzela."
Parenthetically, we note that although paragraph 6 of the pretrial order provided that Fidelity was then granted leave to file an answer to the complaint of Allstate within 20 days, no answering pleading was ever filed; and that, notwithstanding this state of the pleadings, the case went to trial and judgment. These breaches of the Revised Rules are disapproved. A case should not be pretried, much less tried on its merits, before the legal issues involved are raised by an answering pleading. R.R. 4:7-1 requires that there *411 shall be an answer filed. While amendments to filed pleadings may be allowed at the pretrial conference there is no warrant in the rules for the action here taken.
Evidently the declaratory judgment action was severed from the negligence case. In entering judgment therein for the defendant the trial court specifically denied the relief demanded by plaintiff in its complaint, holding that Marsch was not insured under the Fidelity policy, and therefore Fidelity was not obliged to furnish him with a defense, pay a judgment entered against him, or reimburse Allstate for expenses and counsel fees incurred by that company in investigation and defense. Thereafter Allstate undertook the present appeal.
During the pendency of the appeal the negligence case was settled by the payment to Ryan of $55,000. As a part of the settlement negotiations a stipulation was entered in open court by Allstate and Fidelity which provides that:
"If as a result of the determination of the pending appeal and any subsequent appeal in the declaratory judgment suit, Allstate is found not to be financially responsible in this present case, that ends the matter insofar as Allstate is concerned, subject, of course, to the recognized right of Fidelity & Casualty to appeal in the same matter. If as a result of that determination, Allstate is found to be financially responsible, it may indeed become necessary to try the issue of negligence only in the instant case as between the defendant Marsch and the defendants Petruzela in order to determine whether or not Allstate is financially responsible in this matter. * * * The simple remaining question is whether or not Allstate is financially responsible for any part of this settlement and if so, what part, whether it be a part or all. And when that question is determined, dependent upon the determination, Allstate will pay to the Fidelity & Casualty whatever sum, if any, is so determined, * * *." (Emphasis added)
We pause here to point out that the italicized portion of the stipulation refers to a matter which was not embraced by the complaint, pretrial order, or the judgment under appeal. What has been litigated, and what is before us, is the narrow question of whether Marsch was an additional insured under the Fidelity policy. If that is found not to be the case, *412 the amount Allstate will be called upon to pay Fidelity may depend upon a determination of the legal liability of the Petruzelas and Marsch inter sese and the effect of such determination upon the mutual obligations of the two companies as coinsurers under their respective policies.
Again we must express our disapproval of the piecemeal approach both parties have taken to the resolution of their dispute. The purpose of the Uniform Declaratory Judgments Act, N.J.S. 2A:16-50 et seq., is:
"* * * to settle and afford relief from uncertainty and in-security with respect to rights, status and other legal relations." (N.J.S. 2A:16-51)
The act finds full application to the subject matter here involved. However, there is implicit in this legislation the idea that "rights, status and other legal relations" of the parties will be fully and finally determined to the end that all "uncertainty and insecurity" with respect thereto will be removed by adjudication. As we have pointed out, as matters now stand, if the present judgment is affirmed a further construction of other portions of the two insurance policies which form the basis of this suit may be required. This could have been, and should have been, avoided by the simple means of litigating first, the reserved issue of negligence and then, if necessary, amending the pleadings in the declaratory judgment action prior to the trial of this case. In such circumstances the trial judge would not only have determined the issue raised herein but could also, upon request, have fixed the intercompany obligations with respect to payment of the settlement amount or quantum of contribution thereto, depending upon the policy provisions relating to same.
However, we must take the case as we find it, and so our adjudication will be limited to a determination of the propriety of the action taken by the trial court in respect of the relief demanded.
*413 The factual findings of the trial court are not contested on this appeal. Indeed, it may be said that the essential facts were not in significant dispute at the trial.
A resume of the facts as found by the trial judge and the inferences he elicited from them presents this picture: On the evening of December 18, 1958 Petruzela granted permission to his son to use his automobile to attend a high school basketball game. The father knew that other young people would be in the car. As Peter, Jr. was leaving the Petruzela residence his father uttered the familiar cautionary words, "take it easy" and "don't let anybody drive the car." By prearrangement Peter, Jr. then picked up Marsch and another young man, Carl Colello. As they were about to drive to the home of Colello's girl friend, who with another young lady was to accompany them to the game, Colello asked if he might take the wheel. Peter, Jr. assented. Colello drove the car; Petruzela moved to the right side of the front seat, and Marsch sat between them. Upon arrival at the girl's home Colello got out of the car, leaving the motor running. Marsch then slid behind the driver's seat and said to Peter, Jr., "How [do you] operate a standard shift car?" Petruzela replied, "put it in first gear to make it move," and "Simultaneously, give it gas and release the clutch." Marsch followed these instructions. The car started to roll and as it did so Peter, Jr. yelled: "Stop. Put your foot on the brake. Stop." The car continued forward and passed another automobile parked about 30 feet ahead. Peter, Jr. tried to apply the foot brake and attempted to reach the hand brake, to no avail. He said, "Steer, steer," but at this point Marsch, completely confused, applied the accelerator instead of the brake. The speed of the vehicle increased, it crossed an intersection and then went over the curb and struck Ryan who was walking on the sidewalk.
The trial court concluded that Petruzela's answers to Marsch's questions as to how a standard shift car is operated were not merely informational on this technological *414 subject or "just idle instructions" but that "Petruzela had a knowledge that with Marsch behind the wheel, he intended to operate the motor vehicle and that these were instructions in the operation of the motor vehicle." This conclusion is not criticized by appellant.
The pertinent clause of the Fidelity policy includes as an "insured" any "person using such automobile, provided the actual use thereof is with the permission of the named insured." (Emphasis added) The rationale of the trial court's determination was that since the actual use to which the car was being put at the time of the accident was the giving of driving instructions to the unlicensed driver Marsch, and operation of the vehicle by Marsch pursuant thereto, such actual use was not within the purview of the permission granted by the named assured, and consequently Marsch was not covered under the policy. We disagree with the legal conclusion thus reached.
Initially we deem it advisable to reiterate the distinction between the use of an automobile and the operation of such a vehicle. In construing an omnibus clause identical in substance and effect with that here involved, the Supreme Court in Indemnity Ins. Co., etc. v. Metropolitan Cas. Ins. Co. of N.Y., 33 N.J. 507, 513 (1960), said:
"The clause says nothing about operation of the vehicle. It is the use which must be permitted. * * * We think that in this context the words use and operation are not synonymous. The use of an automobile denotes its employment for some purpose of the user; the word `operation' denotes the manipulation of the car's controls in order to propel it as a vehicle. Use is thus broader than operation."
In the Indemnity case the named insured and her husband were the sole stockholders in a wholesale beer distributing company located in Monmouth County. As part of its sales promotion program the company had its salesmen take customers, and their employees and friends, on tours of a brewery in Philadelphia, the insured's automobile often being used with her permission for this purpose. On the *415 occasion in question she gave the keys to the vehicle to her employee Smith so that he might transport a party to the brewery. She said nothing at that time about who was to drive the car, although on prior occasions she had told Smith that only he was to operate the car. On the return trip one Acerra, a member of the party, was driving the car with Smith's permission, when it left the road and struck a tree. Smith and Acerra were killed; other passengers were injured. Acerra was insured under "a drive other car" endorsement contained in another automobile liability policy. The question presented to the court was whether Acerra was an additional assured under the policy covering the vehicle involved in the accident in light of the fact that he did not have the insured's permission to operate it.
In concluding that Acerra was covered, Justice Proctor reasoned that even assuming permission was not given by the named assured to operate the vehicle, its use by Acerra, i.e., the transporting of customers of the assured, was an expressly permitted use.
In so deciding the court took occasion to distinguish Indemnity from the contemporary case of Baesler v. Globe Indemnity Co., 33 N.J. 148 (1960), opinion also by Justice Proctor. In Baesler the named assured loaned his car to his nephew for the latter's general use but expressly forbade its use by others. The nephew lent the car to a friend to keep a social engagement, and an accident occurred when the nephew was not in the car. The court, accenting the distinction between operation and use, denied coverage under the omnibus clause to the second permittee because the use to which the car was put by the second permittee differed from the use permitted by the named insured. The court reviewed the development of the law on this subject at length. Stating the well established general rule that when the named assured gives another permission to use his insured automobile, without more, the permittee is not thereby authorized to allow another to use it and that such use is *416 not "with the permission of the named insured," Justice Proctor went on to say that this rule is subject "to a broad qualification in terms of the scope of the named insured's initial grant of permission." Further, that a "factual determination must be made, in every case where the first permittee permits another to use the insured automobile, whether the initial grant of permission was broad enough to include an implied grant to the permittee of authority to give another use of the automobile, and thus to render the latter an additional insured under the omnibus clause of the policy." 33 N.J., at pp. 151-152.
Analyzing the factual differences which resulted in the diverse, yet reconcilable, decisions in Indemnity and Baesler, we find that the following were pre-eminent: In Baesler, the initial permittee was (1) expressly precluded by the named assured from granting any other person the use of the vehicle, (2) the initial permittee was not in the car and so, obviously, was not using it himself, and (3) the use to which the automobile was put served no purpose favorable to either the named insured or the initial permittee, nor was it within the scope of the use contemplated by the permission. In Indemnity, (1) while the second permittee was without permission to operate the vehicle, (2) the use to which it was being put by the second permittee at the time of the accident served the named insured's purposes, or, at least, was not repugnant to either his general purposes in loaning the car to his employee Smith, the initial permittee, or to the purposes of the latter.
That the element of permitted operation in either case was of no determinative consequence is borne out by the expression of Mr. Justice Proctor in Baesler that:
"A different case would be presented where the named insured expressly forbade his permittee to allow anyone else to operate the insured vehicle, and contrary to these instructions the permittee allowed another to drive, but the purpose to which the vehicle was being put was within the scope of the initial permission. Such would be the case, for instance, where a father permitted his son to use the car for social engagements, and, while `double-dating,' *417 the son, contrary to his father's orders, turned the wheel over to a fellow occupant. In those situations it has been held that even though the car was being operated contrary to the named insured's initial grant of permission, yet the driver is an additional insured because the use of the car was an authorized one." (33 N.J., at pp. 153-154)
Thus, in the present case we must dismiss as a significant factor the effect of Petruzela's injunction to his son  "Don't let anybody else drive the car." Standing alone, these words, in light of the established law, were of no greater importance than the father's commendable accompanying instruction  "Take it easy."
Yet, we are left here with a factual situation not present in either Baesler or Indemnity, or in any case cited in either, where the question of coverage of a second permittee under an omnibus clause has been adjudicated. Nor is the recently decided case of Standard Accident Ins. Co. v. Allstate Insurance Co., 72 N.J. Super. 402 (App. Div. 1962), factually apposite. There we held that the absence of an express prohibition from loaning the vehicle clothed the initial permittee with the authority to lend it, and so brought the second permittee within the coverage, although the use to which the vehicle was put served exclusively the purposes of the second permittee.
The question we must resolve, simply put, is this: Were Peter, Jr.'s instructions to 15-year-old Marsch concerning the operation of a gearshift car and the consequent operation of it by Marsch reasonably connected with, or a part of, the use for which permission was granted, or was such operation by Marsch an interruption of the permitted use, and, thus, extraneous to it?
In our effort to answer this question we note the broad policy of liberal interpretation which the Supreme Court enunciated in the Indemnity case, wherein the court said:
"We have recently noted that the language of the standard omnibus clause in an automobile liability insurance contract is to be construed broadly in favor of the insured and injured to effectuate a strong *418 legislative policy of assuring financial protection for innocent victims of automobile accidents." (33 N.J., at pp. 512-513)
citing Matits v. Nationwide Mutual Ins. Co., 33 N.J. 488 (1960).
In Matits, a case distinguishable from that under review in the respect that there the court was treating with the scope and the legal effect of permission granted to an original permittee, as contrasted with the situation before us, the court came to grips with a question of policy not previously directly decided in this State. It noted that other jurisdictions had adopted one of three views: (1) the liberal or so-called "initial permission" rule that if a person has permission to use an automobile in the first instance, any subsequent use while it remains in his possession, though not within the contemplation of the parties, is a permissive use within the terms of the omnibus clause; (2) the moderate or "minor deviation" rule that the permittee is covered under the omnibus clause so long as his deviation from the permitted use is minor in nature; and (3) the strict or "conversion" rule that any deviation from the time, place, or purpose specified by the person granting permission is sufficient to take the permittee outside the coverage of the omnibus clause. 33 N.J., at pp. 492-493.
The liberality of the approach to the problem then before it, is evinced by the court's own words:
"We think that the `initial permission' rule best effectuates the legislative policy of providing certain and maximum coverage, and is consistent with the language of the standard omnibus clause in automobile liability insurance policies.
Accordingly, we hold that if a person is given permission to use a motor vehicle in the first instance, any subsequent use short of theft or the like while it remains in his possession, though not within the contemplation of the parties, is a permissive use within the terms of a standard omnibus clause in an automobile liability insurance policy." (33 N.J., at pp. 496-497) (emphasis added)
While, as we have already observed, this pronouncement has no direct application to the specific problem before us, we *419 regard the philosophy by which it is undergirded as an injunction that if the use to which the Petruzela car was put may on any rational theory of liberal interpretation be brought within the scope of the permission granted to Peter, Jr., it is our duty to adopt such theory rather than a competing theory of equal merit which would lead to an opposite result. This accords with the well settled doctrine that if the controlling language of an insurance policy will support two meanings, one favorable to the insurer and the other favorable to the insured, the interpretation sustaining the coverage must be applied. Mazzilli v. Acc. & Cas. Ins. Co. of Winterthur, 35 N.J. 1, 7 (1961).
Strictly speaking, the express use of the vehicle contemplated by the named insured was the transporting of Peter, Jr. and his friends to and from a basketball game. Yet it would be unreasonable to say that any deviation from this purpose would have constituted a breach of the permission so as to deny the original permittee coverage under the omnibus clause. Absent any showing that the use contemplated was limited to attendance at a basketball game, it must be inferred that the father gave his son general and unrestricted permission to use the car that night for recreational purposes.
As we have already pointed out in our discussion of Baesler, there can be no doubt that had an accident occurred in the course of the planned purposes of the evening while either Colello or Marsch was at the wheel, the driver would have been covered since in such circumstances the use to which the car was being put would have accorded with the permission granted notwithstanding that it was operated in contravention of the named insured's specific instructions. But it does not follow that simply because the precise use of the car at the moment of the accident did not serve the particular purposes for which the vehicle was borrowed, the driver of the vehicle at such time is disentitled to the coverage he might otherwise have.
*420 We think that with the factor of nonpermission to operate the automobile removed from the case, the legal effect of Marsch's operation of the vehicle must be equated to the scope of the use permitted Peter, Jr. by his father.
The trial court found, and we will not disturb the finding, that Peter, Jr. had given Marsch instructions in the operation of the vehicle apprehending that they would be followed, and that with the motor running, he must have known that inevitably the car would move forward. That in giving these instructions Peter, Jr. acted unwisely, cannot be denied. That the named insured may not have contemplated such an occurrence, and that he would have expressly disapproved it had the possibility of its happening entered his mind, is likely. But this is not the test to be applied in the ascertainment of whether the use was within the permission granted. We are not concerned abstractly with what may have been within the contemplation of Petruzela, Sr., but only with whether the permission he gave affirmatively curtailed the use of the vehicle by his son. Plainly, it did not. Thus, the use to which the car might be put, in legal purview, was such use as Peter, Jr. might will, so long as it did not significantly conflict with the broad and general purposes for which the car was loaned to him.
We do not have here a Baesler situation. There, as noted in the Indemnity case, the second permittee had been expressly prohibited by the named insured from using the automobile. Moreover, the use served his personal purposes exclusively, the initial permittee not even being present. Here the car was operated by Marsch at the direction of Peter, Jr., and so, was as much in Peter, Jr.'s use as if he had been driving it at the time. As was said in Indemnity, an automobile may be used by one riding in it although another is driving. 33 N.J., at p. 513.
We conclude, therefore, that the unrestricted permission to use the car encompassed the use to which Peter, Jr. put it when he undertook to instruct Marsch in its *421 operation. While the operation by Marsch was contra the instructions of the named insured, the use was not, and since it is permitted use which gives rise to coverage, Marsch must be regarded as an additional insured under the Fidelity policy.
The judgment is reversed, judgment to be entered in the Law Division in accordance with the relief demanded in the complaint and in conformity with this opinion.