**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a corporation, Appellant,**

v.

**Alice Willene WILLIAMSON, a minor, John Brenkman, a minor, Carl E. Brenkman, C. W. Waddoups, Clara R. Waddoups, and Sara R. Murry, dba Rudolph Chevrolet, Appellees.**

**No. 18783.**

United States Court of Appeals Ninth Circuit.

April 16, 1964.

518

Lewis, Roca, Scoville, Beauchamp & Linton, and John P. Frank and Delbert W. Grainger, Phoenix, Ariz., for appellant.

Laney & Laney, and Jack H. Laney, Phoenix, Ariz., for appellee Brenkman.

Snell & Wilmer, and H. William Fox and Mark Wilmer, Phoenix, Ariz., for appellees C. W. Waddoups et al.

Before HAMLEY, JERTBERG, and MERRILL, Circuit Judges.

MERRILL, Circuit Judge.

In this Arizona diversity action, appellant seeks a declaratory judgment upon the question of its liability under the "Omnibus Clause" [1] of a policy of automobile insurance. At issue is the question whether the operator of an automobile involved in an accident was using the car with the permission of the named insured.

The court determined that no express permission had been granted and sent the case to the jury upon the issue of the existence or nonexistence of implied permission. Verdict was rendered against the appellant upon this issue.

Appellant had moved for a directed verdict at the close of the evidence. This motion was denied, as was a subsequent motion for judgment notwithstanding the verdict. Appellant here asserts that there was no evidence to warrant submission of the question of implied permission to the jury, and no evidence to support the jury's verdict that permission impliedly had been granted.

It must be conceded that upon the record appellant's case is a strong one, and that of appellees is extremely weak. In our judgment, however, there was sufficient evidence in appellees' favor to create an issue upon which reasonable minds might differ.

The insured persons, Mr. and Mrs. Judd, permitted their twenty-year-old son, Kenneth, to use the family car. He, in turn, on one occasion permitted a friend, appellee Alice Willene Williamson (known as "Willene") to operate the car. On that occasion she was involved in the accident.

The father, mother and Kenneth all testified that Kenneth had been expressly prohibited from permitting anyone else to use the car. Willene testified that she knew of this prohibition.

On the other side of the ledger were these facts:

For eight months prior to the accident Kenneth had been provided with his own set of keys. During a period of two years, when he was attending Arizona State University, he had been given blanket authority to use the car to go to college.

While Kenneth had been frequently cautioned respecting his use of the car and had operated the car under a set of rules laid down by his parents, during the years when he had been using the car he had frequently shown a disregard for these rules. He had, with his parents' knowledge, received several citations for speeding, and had been involved in two to four accidents. He had, without permission and contrary to instructions, taken the car to Mexico for an over-

[1] " * * * the unqualified word 'insured' includes * * * (3) any other person while using the automobile, provided the actual use of the automobile is with the permission of the named insured * * *."

night trip. His parents knew of his pattern of disregard. While they testified that he had been disciplined for violation of the rules (including depriving him of the use of the car for brief periods), they had thereafter continued to allow him to use the car.

The relationship between Kenneth and Willene was apparently a close one at the time of the accident. They were next-door neighbors, Willene living with her parents in a rental unit on the Judd property. They were dating, and Kenneth was permitted to use the car on such occasions. About a month after the accident they were married. The Judds knew that Willene could operate a car as they had seen her driving her family car.

We turn from the facts to legal principle, and start with the proposition that the omnibus clause, for reasons of public policy, is to be liberally construed.

Jurd v. Pacific Indemnity Company (1962) 57 Cal.2d 699, 703, 21 Cal.Rptr. 793, 795, 371 P.2d 569, 571, states as follows:

"Provision for omnibus coverage in an automobile liability insurance policy reflects a legislative policy to protect the public when a motor vehicle is operated by one other than the insured owner with his consent. * * * In those jurisdictions where the insertion of an omnibus clause is required by statute in a liability insurance policy, it is liberally construed so as to effectuate the manifest public policy of broadening the insurance coverage."

Arizona has such a statute.[2]

By the omnibus clause an insurer authorizes the named insured to extend coverage by granting to others a permission to use his car.

Once permission has been granted (as in this case) the coverage of those whom the permittee in turn permits to use the car will depend on the scope of the authority with which the named insured has vested his permittee. The question is whether the named insured has authorized his permittee in turn to extend coverage by allowing others to use the car.

Upon this question the rule in general is stated in Baesler v. Globe Indemnity Co. (1960) 33 N.J. 148, 162 A.2d 854, 856–857, as follows:

"It is a well established general rule that when the named insured gives another permission to use his insured automobile, without more, the permittee is not thereby authorized to allow another to use it. And if he does, the second permittee's use is not 'with the permission of the named insured,' as those words are used in a comprehensive liability policy. [Authorities cited.]

"The rule is subject, however, to a broad qualification in terms of the scope of the named insured's initial grant of permission. The factual determination must be made, in every case where the first permittee permits another to use the insured automobile, whether the initial grant of permission was broad enough to include an implied grant to the permittee of authority to give another use of the automobile and thus to render the latter an additional insured under the omnibus clause of the policy. [Authorities cited.]

"Thus, it is almost universally held in the modern cases that where the named insured grants his per-

2. Arizona Revised Statutes, § 28–1170: "'Motor Vehicle Liability Policy' defined * * * B. The owner's policy of liability insurance must comply with the following requirements: * * * 2. It shall insure the person named therein and any other person as insured, using the motor vehicle or motor vehicles with the express or implied permission of the named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of the motor vehicle or motor vehicles within the United States or the Dominion of Canada, subject to limits exclusive of interests and costs, with respect to each motor vehicle as follows: * * *."

mittee broad and unfettered dominion over his insured automobile, he also impliedly authorizes his permittee to allow a third person to use it, and thus to render him an additional insured. [Authorities cited.] The first permittee, by being granted complete dominion over the insured automobile, is put in the shoes of the named insured, and therefore his permittee is held to be the named insured's permittee. [Authorities cited.]"

It may well be disputed that such "broad and unfettered dominion" was granted to Kenneth in this case as to place him in the shoes of his parents. However, it does not necessarily follow that without such broad general powers of use, Kenneth was without implied authority to permit Willene to operate the car.

■■ If an owner reasonably should anticipate that his permittee will put the car to a particular use, permission to operate the car, without more, can be found to encompass permission for that use. See 7 Appleman, Insurance Law & Practice (1962) § 4367, at 312, § 4368. If an owner reasonably should anticipate that, in view of the scope and nature of the permission granted (even if less than unfettered dominion), and because of the permittee's relationship to another, the permittee will allow that other to use the car, the owner's permission, without more, can be found to encompass permission for that use.[3]

In the instant case it is the position of appellees that from the facts as recited the jury could infer that the Judds should and did reasonably anticipate that Kenneth would allow Willene to drive the car; that by continuing to allow Kenneth to use the car under these circumstances they impliedly manifested an assent to this act.

We agree. That such inference was drawn by the jury is apparent from the charge to the jury. See infra, footnote 4.

Appellant argues that while such an inference might be available under other circumstances, it cannot be drawn here in the face of the Judds' express prohibition. In our judgment, however, the question remained one for the jury.

Upon this question the jury was not required to accept at face value the testimony of the principal witnesses as to their subjective understanding as to what was in fact permitted and what was in fact forbidden. Even if cautions and prohibitions are constantly and expressly reiterated, this fact cannot control upon this issue.

If the understanding of the parties is that a disregard of the "rules" will be ignored, or will bring forth only reprimand or token punishment, an invitation to disregard is implicit. If a permittee is led to believe that the exercise of his own judgment within the "forbidden" area will not prejudice him in his status as permittee or otherwise, authority to disregard can be found.

The factual issue, then, is whether Kenneth, at the time he delivered the car to Willene (unaware, of course, that an accident would ensue), could and did deduce from past experience with his parents that even when brought to their attention, this act (notwithstanding their disapproval) would not prejudice him in his status as permittee, or otherwise bring about anything more than a reprimand or token punishment. In the vernacular: On the basis of past experience in such matters, could he reasonably sup-

3. See Brooks v. Delta Fire & Cas. Co. (La. App.1955) 82 So.2d 55. Here the court concluded that the owner, who loaned the vehicle to his daughter for a trip to another city, could reasonably anticipate that if the daughter were unable or unwilling to continue driving she would seek to turn the driving over to a friend who would be accompanying her (with the father's knowledge), and that therefore the owner impliedly permitted driving by the friend on the way home when the daughter desired to stop driving to tend her baby. See also Costanzo v. Pennsylvania Threshermen & Farmers' Mutual Cas. Ins. Co. (1959) 30 N.J. 262, 152 A. 2d 589, 593.

pose and did he suppose that he could "get away with it?"

If so, he might consider himself faced not with an order but with a wishful direction which, in the exercise of his own judgment, he was impliedly free to disregard. If so, assent to such disregard on the part of the Judds can be found.

The question for us upon this appeal is whether, upon this record, the negative answer to this factual issue so clearly appears that reasonable minds could not differ upon it.

The case undoubtedly is a close one, but we cannot say that the answer is clear beyond reasonable difference. It was not error, then, to give the question to the jury.

The appellant assigns as error that portion of the court's charge to the jury defining implied permission. The court adopted the instruction proposed by appellees, and rejected that proposed by appellant.[4]

■ Appellant asserts as prejudicial error language in the court's instruction inviting the jury to find implied permission should they find that the Judds' actions signified their "lack of objection" to Willene's use of the car. Appellant states that the failure of the court to specify that lack of objection must be "with knowledge of the facts" (as specified in appellant's proposed instruction) invited the jury to find implied permission from the fact that the Judds, in for-

bidding Kenneth to permit others to use the car, did not specifically name Willene.

Appellees reply that common sense would have told the jury that knowledge was necessary if the conduct of the parties was to be such as would "manifest assent to or acquiescence in the act in question" as the court's instructions had provided.

We agree.

Judgment affirmed.

4. The court instructed the jury as follows: "Implied permission is that which arises out of the conduct of the parties and the circumstances surrounding their actions. It results from such actions and may be found where the course of conduct of the parties is such as to manifest assent to or acquiescence in the act in question.

If you find that the actions and conduct of Ray A. Judd and Lucille Judd are such as to signify their assent or lack of objection to the delegation of the use of the automobile in question to Alice Willene Williamson, now Alice Willene Judd, then you should find such use was with the implied permission of Ray A.

Judd and Lucille Judd. If you do not find those necessary conditions, then you cannot find such implied permission."

Appellant had proposed the following: "Implied permission is defined as permission which is inferred or deduced from the circumstances or may result from a course of conduct of the parties in which they mutually acquiesce, or it may arise from a course of conduct pursued with knowledge of the facts for such time and in such manner as to signify clearly and convincingly an understanding consent which would amount to a grant of the privilege involved."