107 N.J. Super. 80 (1969)
257 A.2d 2
MARGARET BUTLER AND WILLIAM BUTLER, PLAINTIFFS-RESPONDENTS,
v.
MARY BUENAGA AND BONNER & BARNEWELL, INC., A CORPORATION, DEFENDANTS. MARY BUENAGA, THIRD PARTY PLAINTIFF-RESPONDENT AND CROSS-APPELLANT,
v.
PEERLESS INSURANCE COMPANY, THIRD PARTY DEFENDANT-APPELLANT AND CROSS-RESPONDENT, AND OHIO CASUALTY INSURANCE GROUP AND WEST AMERICAN INSURANCE CO., THIRD PARTY DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 8, 1969.
Decided September 26, 1969.
*81 Before Judges GOLDMANN, LEWIS and MATTHEWS.
*82 Mr. John G. Rathman argued the cause for third party defendant-appellant and cross-respondent Peerless Insurance Company (Messrs. Jung, Selikoff, Rathman & Dwyer, attorneys; Mr. Marshall Selikoff, of counsel and on the brief).
Mr. Hugh J. O'Gorman argued the cause for third party plaintiff-respondent and cross-appellant Mary Buenaga (Messrs. Cunneen & O'Gorman, attorneys).
Mr. Robert E. Monaghan argued the cause for third party defendants-respondents Ohio Casualty Insurance Group and West American Insurance Co. (Messrs. Schneider & Morgan, attorneys).
Mr. Arthur J. Messineo, Jr. argued the cause for plaintiffs-respondents Margaret Butler and William Butler (Messrs. Messineo & Messineo, attorneys; Mr. Dennis P. La Hiff, on the brief).
The opinion of the court was delivered by LEWIS, J.A.D.
This case concerns coverage under automobile liability insurance policies. Third-party defendant Peerless Insurance Company (Peerless) appeals from an order for summary judgment in favor of Mary Buenaga on her third-party complaint and from an order dismissing a similar third-party complaint and cross-claims against third-party defendants Ohio Casualty Insurance Group and West American Insurance Co. (Ohio Casualty). Mary Buenaga cross-appeals from that portion of the summary judgment which was in favor of Ohio Casualty.
Preliminarily we note that the trial court's determinations were interlocutory and that this court has not heretofore granted leave to appeal. See R. 2:2-3, formerly R.R. 1:2-1, *83 2:2-1. See also Sullivan, J.A.D., "Interlocutory Appeals," 92 N.J.L.J. 161 (1969), and the authorities therein collected. The appeals are therefore subject to dismissal.
With the consent of all parties, however, we permitted argument on the merits and then, with reluctance, we decided on our own motion to grant leave to appeal nunc pro tunc. In doing so we emphasize for the benefit of the Bar that in the future we may not follow such a course. Moreover, it should be noted that, in a situation where an appeal has been improvidently filed, respondent has a responsibility to the court to file a timely motion to dismiss the appeal.
We turn now to the critical facts of the case. On May 5, 1967 Mary Buenaga was operating a 1966 Oldsmobile owned by Bonner & Barnewell, Inc. (Bonner Company), the employer of her husband, Henry Buenaga. An accident resulted in personal injuries to plaintiff Margaret Butler, a passenger in the vehicle. The latter, and her husband per quod, instituted the present negligence action against the driver and owner. The Buenagas forwarded the summons and complaint to Peerless, Bonner Company's insurance carrier, whose policy obligated it to insure "* * * any other person while using an owned automobile * * * with the permission of the named insured, provided his actual operation * * * is within the scope of such permission * * *." Peerless undertook to represent Bonner Company and disclaimed coverage on the ground that Mary Buenaga was an unauthorized operator of the insured vehicle.
The Buenagas who owned a Volkswagen then looked to Ohio Casualty, the insurers of that car, for coverage under their policy which provided for insurance to the following persons:

* * * * * * * *
(b) With respect to a non-owned automobile, (1) the named insured (2) any relative, but only with respect to a private passenger automobile or trailer, provided the actual use thereof is with the permission of the owner; * * * *84 The policy defined "non-owned automobile" as "an automobile or trailer not owned by or furnished for the regular use of either the named insured or any relative, other than a temporary substitute automobile." (Emphasis added).
Ohio Casualty undertook the defense of Mary Buenaga. It engaged in discovery proceedings and thereafter expeditiously disclaimed coverage on the ground that the vehicle operated by her at the time of the accident was furnished to her husband for his regular use and that, under the terms of its policy, coverage was excluded.
As a result of those disclaimers, Mary Buenaga filed a third-party complaint against Peerless and Ohio Casualty seeking a judicial determination that each defend her in the original litigation, satisfy any judgment arising therefrom and indemnify her for costs and attorney's fees incident to her defense and in the prosecution of her third-party action. In its answer Peerless cross-claimed against Ohio Casualty. After a hearing on Buenaga's motion for summary judgment against each of the insurance carriers, the aforementioned orders were entered.
We consider first the question of coverage under the Peerless policy. The trial court relied upon Matits v. Nationwide Mutual Ins. Co., 33 N.J. 488 (1960), and held that "the principle of the initial permission rule" is controlling. Peerless argues that Baesler v. Globe Indemnity Co., 33 N.J. 148 (1960), decided within six months prior to Matits, presents a fact pattern similar to the case at bar and that the trial court, in failing to follow the rationale in Baesler, erroneously resolved the question of coverage. It is contended that the present matter does not concern a deviation from an initially permitted use; that the use by the second permittee was expressly prohibited and, in any event, if coverage is to be extended to Mary Buenaga, "she will have to prove her factual contentions as to the alleged grant of permission by an official of Bonner and Barnewell for her to use the automobile." A brief collative review of these cases is in order.
*85 In Baesler the named insured purchased an automobile and immediately turned it over to his nephew for the latter's exclusive use, with the express prohibition that he was not to permit "other people to use said vehicle." The nephew loaned the car to a friend who, while using it, became involved in a collision. The court held that the friend was not covered as an additional insured under the omnibus clause of the insurance policy but observed:
A different case would be presented where the named insured expressly forbade his permittee to allow anyone else to operate the insured vehicle, and contrary to these instructions the permittee allowed another to drive, but the purpose to which the vehicle was being put was within the scope of the initial permission. [33 N.J., at 153].
Matits was an "omnibus clause" case where a husband gave his neighbor, for the purpose of visiting her mother, permission to use his wife's automobile. After completing the intended mission, the neighbor paid alternate visits to a tavern-restaurant and a bar. On her way home she met with an accident. She was held to be insured. After considering the divergent views of the applicable New Jersey law and discussing the liberal or so-called "initial permission" rule, the moderate or "minor deviation" rule and the strict or "conversion" rule, the court expressed the view that the rules making insurance coverage turn on the scope of permission given to the first permittee "render coverage uncertain in many cases, foster litigation as to the existence or extent of any alleged deviations, and ultimately inhibit achievement of the legislative goal." The opinion stated that the initial permission rule "best effectuates the legislative policy of providing certain and maximum coverage, and is consistent with the language of the standard omnibus clause in automobile liability insurance policies." 33 N.J., at 496. The court then decided that if a person is given permission to use a motor vehicle in the first instance, "any subsequent use short of theft or the like while it remains in his possession, though not within the contemplation of the parties, is a *86 permissive use within the terms of a standard omnibus clause in an automobile liability insurance policy." 33 N.J., at 497.
In a later decision, Small v. Schuncke, 42 N.J. 407 (1964), the same court had before it these facts: the named insured permitted his nephew to use the car for the purpose of transporting the insured's wife on certain of her errands. On a particular occasion, unrelated to any such errands, the nephew and a friend went drinking and then proceeded to New York. Along the route the friend took over the operation of the car. There was an accident. The Supreme Court made no reference to an extension of the "initial permission" rule to a third-party operator, and concluded:
* * * We hold that Weidel [named insured] gave Wagner [nephew] permission to "use" the car when he entrusted the latter with possession and requested that he operate the car to perform the various errands. Accordingly, Wagner and Schuncke [driver] are additional insureds * * * unless their use of the car at the time of the accident constituted "theft or the like."
* * * The initial permission rule as expressed in Matits contemplates a situation in which the subsequent use of a car may be inconsistent with and even frustrate the intention and plans of the person granting permission. [42 N.J., at 414-415].
In reaching that decision it was pointed out that in determining coverage under the "initial permission" rule only two questions must be answered, i.e., "Was there permission to use the car initially? Did the subsequent use, while possession was retained, constitute `theft or the like?'" 42 N.J., at 413. For general discussion of the "initial permission" rule which is based upon a broad interpretation of the omnibus clause, see Cohen & Cohen, "Automobile Liability Insurance: Public Policy and the Omnibus Clause in New Jersey," 15 Rutgers L. Rev. 155 (1961); 7 Appleman, Insurance Law & Practice, § 4366, p. 308 (1962); Annotation, 4 A.L.R.3d 10 (1965).
While neither Matits nor Small expressly overruled Baesler, the opinion in the former noted that Baesler was distinguishable *87 since there the coverage did not extend to a person who was specifically prohibited by the named insured from using the automobile. Plainly, however, the decisions since Baesler have shorn that case of its vitality beyond its particular facts; especially vis-a-vis any factual situation reasonably encompassed within a liberal application of the "initial permission" rule and the underlying public policy intended to be served.
We find that the facts in the instant matter can be readily differentiated from those in Baesler, where the prohibited use was stipulated. Here there was no such stipulation. To the contrary, Mary Buenaga maintained that the insured, notwithstanding its alleged notices, was aware that she occasionally drove the company automobile, and it is undisputed that her husband permitted her to use that car on the night of the accident. The letter of the Bonner Company to its employees entrusted with company cars, heavily relied upon by the insured as adequate notice of prohibited use, merely quoted from an insurance company communication, adding the instruction "You are driving and garaging Company Cars and these cars are not to be driven by anyone other than yourself." (Emphasis added).
Moreover, unlike Baesler which involved a driver unrelated to the initial permittee, Mary Buenaga was the wife of an employee who had the continuous and exclusive possession of his company's vehicle garaged at their home. This spousal relationship was known to the insured. Note 7 Appleman, supra, "Permission  Implied Permission," § 4365, p. 300 (1962). Cf. State Farm Mutual Automobile Ins. Co. v. Williamson, 331 F.2d 517 (9 Cir. 1964).
Finally, to require a trial on the issue of prohibited use, as urged by Peerless, would run counter to the basic concept of the "initial permission" rule that seeks, in carrying out our legislative policy, to avoid litigation where coverage depends upon a resolution of uncertainties as to the scope of permission.
Thus viewed we are satisfied that the judgment ordered against Peerless should not be disturbed.
*88 We also agree with the trial court's determination in favor of Ohio Casualty. It is clear that Henry Buenaga had the "regular use" of his employer's car and, accordingly, that vehicle was an uninsured "non-owned automobile" under the terms of the Ohio Casualty policy covering the Buenaga Volkswagen. The facts in the record do not support any claim of estoppel or prejudice.
The judgments under review are affirmed.