## WILL OF PARKS.

*April 5—October 4, 1910.*

*Wills: Undue influence.*

The decision of the trial court, in a will contest, that the disinheriting of testator's adopted daughter was not induced by undue influence of his wife, is *held* not to be so clearly against the preponderance of the evidence as to warrant reversal.

APPEAL from a judgment of the circuit court for Milwaukee county: E. B. BELDEN, Judge.   *Affirmed.*

An instrument purporting to be the last will and testament of Henry O. Parks, deceased, was, in due form, admitted to probate in the county court of Milwaukee county.   *Lorena*

*Ellen Parks,* an adopted daughter of the testator, appealed to
the circuit court, claiming she was prevented from being a
beneficiary under the will and sharing in the distribution of
the testator's estate by reason of undue influence exercised by
his wife, in that she maliciously sought to pervert, and suc-
ceeded in perverting, the testator's mind as regards the con-
testant, by purposely misrepresenting her character in the
family relations.

There was evidence to this effect: Appellant was adopted
into the testator's family when she was about four years of
age. She was the only child of the testator and his wife.
She resided with them till she was eighteen years of age.
She then induced her uncle, in New York, to invite her to
visit him in order that she might have that as an excuse for
ostensibly leaving her foster parents temporarily, while she
in fact intended to leave them at least for a considerable
length of time, and possibly, if not probably, permanently.
As a result of the scheme she thus devised, she went to her
uncle against the wishes of her foster parents. Not long
thereafter she resumed her original family name and ceased
to communicate with her foster parents by correspondence.
She saw them, briefly, in Milwaukee about five years after
she left their home and again about six years later in Chi-
cago. After that she did not communicate with them, or
either of them, till 1902, and about one year before such time
the testator's wife died. A few days after appellant left the
testator's home he made a will contemplating disinheriting
her, by leaving his property to his wife and making her sole
executrix without bonds. The day after the wife died he
made the will in question in which he remembered appellant
to the extent of $10, made some small charitable and other
bequests, and gave the residue of his property to his and his
wife's relatives. He lived about six years thereafter in the
full possession of all his faculties, during which time he did
not resume, or thereafter attempt to resume, to any extent,

parental attentions to the appellant, or she resume, or attempt to resume, the relations of a daughter. She attempted to regain her former position about a year after the death of her foster mother by writing the testator a letter. In it she tendered him the sympathy of a daughter, offered to hold herself in readiness to go to his assistance at any time he felt in need thereof, informed him that she was residing with her uncle, possessed a millinery business which she had conducted some six years and was yielding her a good income, offered to visit him soon if he desired to see her, solicited a reply, expressed a hope that he cherished no hard feeling towards her, made excuses for dropping his name, and implored him to overlook it. To that he replied, repulsing her, severely, for presuming to address him as her parent after conducting herself as she had toward him and his wife, stating that she had no right to his name or his regard; that her conduct had obliterated all the love and regard he once had for her, rebuked her severely for ill treating her foster mother and saddening her heart instead of being a blessing to her and him, as she might have been, chided her for waiting a year after her foster mother died before writing, admonished her not to come to him as her presence, instead of being a solace to him in his sorrow, would be a constant reminder of blighted anticipations which he preferred to forget as soon as possible; assuring her that while the day had passed forever for her to resume her place in his affections, he did not bear her any malice and forgave her for the unhappiness she had caused, as he received forgiveness for his own misdoings, and hoped to meet her in Heaven; admonished her not to endeavor to shift the blame on to her uncle for grossly insulting the testator by changing her name, when the fault was her own; and closed with the words: "Let this letter close our correspondence, for it only makes me nervous and only awakens memories that I desire to bury forever, if possible. Farewell. Your once loving father, H. O. Parks."

No sign of affection passed between appellant and the testator after the sending to her of that letter, up to the day of his death. She then seasonably appeared and endeavored to break his will by charging her foster mother with having treated her in a most cruel and inhuman manner during the whole of some fourteen years, none of which bad treatment came to the notice of the testator, the idea being to make it appear that the mother was guilty of gross inhumanity for that long period for the purpose of ultimately compelling appellant, in an apparently rebellious way, to leave the family abode, while the mother was studiously cultivating in the mind of the testator the idea that she was unworthy of his regard, which course she persisted in to the end, resulting in the two wills and the failure to change the last one, notwithstanding years lapsed after the wife died, before his decease. The testimony was to the effect that if there were any such ill treatment of appellant as she claimed, the testator was never conscious of it and that if his wife was unjust to her, either before she left the family or thereafter, he had not even a suspicion of it.

There was some evidence corroborating appellant's story and some evidence discrediting it.

The court decided that there was no credible evidence that the testator's wife wrongfully, consciously or otherwise, influenced her husband as to how he should leave his property by will, and that the long lapse of time intervening between the death of his wife and his death, during which he was perfectly free to make any change in his will which he might desire to make without any change being made, was conclusive, under all the circumstances, that he left his property as he desired to leave it, and that the will was valid. Facts appropriate to that view were found and filed, and judgment was rendered accordingly.

*Daniel W. Hoan,* for the appellant.

For the respondent there was a brief by *A. G. Weissert,*

attorney, and *Charles M. Morris,* of counsel, and oral argu-
ment by *Mr. Weissert.*

The following opinion was filed April 26, 1910:

MARSHALL, J.  The foregoing contains a general state-
ment of the case as it was submitted for decision.  It is in
as much detail as seems to be necessary.  There are no dis-
puted questions of law involved which require discussion.
The sole question tried was whether undue influence was used
by the testator's wife, inducing him to disinherit appellant
when he, otherwise, would not have done so.  The trial court,
as indicated, found the facts, in that regard, in favor of pro-
ponent.  In coming to that conclusion correct rules of law
were applied to the evidence.  If any errors were committed
they were in finding in favor of proponent on the vital fact
in issue, though the evidence called for a finding in favor of
appellant.  So the sole question for discussion here is, Does
the evidence clearly preponderate against the trial court's de-
cision on such vital matter?  It is considered that such ques-
tion must be answered in the negative.  To thus state the
conclusion is sufficient for the case.  A lengthy opinion
might be written, analyzing the evidence and pointing out the
probabilities upon one side and upon the other, and demon-
strating that there is no clear preponderance in favor of ap-
pellant, especially when due weight is given to the opinion of
the trial judge who enjoyed the superior advantages of seeing
and hearing the witnesses.  But such lengthy discussion of
the evidence would be merely uselessly incumbering the offi-
cial reports of the court, since such discussion would not shed
any valuable light on how any subsequent case should be de-
cided.  Neither would such discussion afford appellant the
solace sometimes furnished by an opinion, since it would only
tend to spread upon the record, in minute detail, reasons why
the trial court regarded her evidence self-destructive and
incredible.  Judicial charity, so to speak, for the appellant

who has failed in her effort to break her foster father's will, may be better extended by omitting to give in the official report of this case, her evidence in detail, and the reasons which the trial court deemed sufficient to preclude giving credence to it, and which we are unable to conclude were clearly wrong, if wrong at all.

*By the Court.*—The judgment is affirmed with costs against appellant, not to be paid out of the estate.

Upon a motion for a rehearing there was a brief for the contestant by *Daniel W. Hoan,* attorney, and *Michael Levin,* of counsel.

The motion was denied October 4, 1910.