FIDELITY MUTUAL LIFE INSURANCE COMPANY, RE-SPONDENT, v. WILKES BARRE AND HAZELTON RAIL-ROAD COMPANY, APPELLANT.

Submitted December 11, 1922—Decided April 20, 1923.

1. Detached defaulted coupons of a bond form a separate and distinct indebtedness, in the hands of a *bona fide* holder, and he may sue upon the unpaid coupons without regard to a provision in the mortgage securing the issue of bonds, concerning the method of paying the mortgage indebtedness, as evidenced by the bond issue.

2. In a suit upon unpaid detached coupons, it is proper to allow interest from the maturity of the coupons.

3. A motion was made to strike out an answer on the ground that it was sham and frivolous, and the court ordered it struck out on the ground that it was frivolous. *Held*, that this action was correct, as the answer could not be both sham and frivolous.

On appeal from the Supreme Court.

For the respondent, *Coult & Smith*.

For the appellant, *Katzenbach & Hunt*.

The opinion of the court was delivered by

MINTURN, J. The appeal is from an order of a Supreme Court justice striking out an answer filed by defendant as frivolous and entering summary judgment thereon.

The defendant company about May, 1901, executed and delivered to the Guaranty Trust Company of New York, as trustee, a mortgage or indenture of trust, covering certain bonds and shares of stock deposited with the trustee, to secure payment of an issue of bonds in the sum of $2,500,000. The plaintiff prior to May 15th, 1914, became owner and holder of twenty-five of said bonds of the par value of $1,000 each, which contained a covenant that interest thereon at the rate of five per cent. per annum, would be paid semi-annually. The installments of interest payable were evidenced

by coupons attached to the bonds. The coupons for interest which matured on May 15th, 1915, November 15th, 1915, May 15th, 1916, and November 15th, 1916, were detached by plaintiff and presented to defendant for payment, but were not paid, and this suit was instituted to recover the amount due thereon with interest from the respective dates of maturity.

The answer of the defendant admitted these facts, but left the formal proof of ownership of the bonds and coupons to the plaintiff, as well as proof of the amount due thereon. The answer then alleged affirmatively that the trustee alone under the mortgage could enforce payment of the bonds and interest. That detached coupons could not be paid under the mortgage until all overdue coupons held with bonds be paid. That sixty per cent. of the holders of bonds had agreed to postpone payment of interest for five years from the maturity of coupons, and had requested the trustee to refuse to enforce payment of the mortgage or interest in the interim.

It further alleged that the present action would result in conceding a preference to the plaintiff over other bond holders, who acquiesced in the non-enforcement request to the trustee. And finally that the lien of the mortgage was intended to secure primarily the payment of the bonds and thereafter the payment of interest due thereon. The plaintiff moved upon affidavit to strike this pleading out as sham and frivolous, and the court after argument ordered that the answer be struck out as frivolous. Subsequently the court upon the same proof ordered summary judgment entered for the amount claimed with interest, from the respective due dates of the coupons. We concur in the action taken by the Supreme Court, and in the views therein expressed as a basis for its action. Brief consideration of the legal status occupied by the holder of. a detached coupon in a situation of this nature will indicate the fallaciousness of the views contended for by the appellant in its answer, and again in its brief, as a basis for this appeal.

Whatever diversity of view may exist in other jurisdictions concerning the legal status of such holder, his rights have been distinctly set at rest in this state by the declaration that detached defaulted coupons form a separate and distinct indebtedness, in the hands of the *bona fide* holder, and may be sued upon as such regardless of the mortgage provision concerning the payment of the mortgage indebtedness, as evidenced by the bond issue.

In *Jones* v. *Guttenberg, 66 N. J. L.* 659, 666, this court, speaking by Mr. Justice Garretson, declared: "The bond and the coupons are not parts of one debt, they are separate debts, and may be held by different persons, and suit on the one should not bar suit on the other." Eight years thereafter the Supreme Court, speaking by Mr. Justice Trenchard, dealing with the same subject, and evidently following the adjudication of this court in the previous case, declared "a detached defaulted coupon is a separate cause of action independent of the bond." *Mack* v. *American Telephone Co.* 79 *Id.* 109.

Such we conceive to be the general trend of authority. 9 *C. J.* 49, and cases cited; 3 *R. C. L.* 845, and cases cited; 5 *Cyc.* 780, and cases cited.

The detached coupons being separate and distinct obligations, negotiable in character, it becomes obvious that the provisions contained in the trust mortgage relative to the enforcement of the same, or the subsidiary or collateral agreements of other bond holders, in no way identified with the payment of plaintiff's obligations, can have no bearing upon the liability of the defendant, as to that distinct obligation.

It is contended, however, that an error was committed in allowing interest upon the coupons from the date of their respective maturities. This allowance we think was correct as evidenced by the consensus of authority in this and other jurisdictions. *Morton Trust Co.* v. *Home Telephone Co.* 66 *N. J. Eq.* 106; 2 *Dan. Neg. Inst.* 1513; *Walnut* v. *Wade,* 103 *U. S.* 683; 27 *Cyc.* 1520, and cases; *Mills* v. *Town of Jefferson,* 20 *Wis.* 54.

Interest when allowed is in contemplation of law, damages for the illegal detention of a legitimate claim or indebtedness. *Brown* v. *Hiatts,* 15 *Wall* (*U. S.*) 177; *Cochran* v. *Boston,* 211 *Mass.* 171; *McCrackan* v. *Bank,* 164 *N. C.* 24; *S. C., Ann. Cas.* 1915*D.* 105.

Considered from that point of view, its allowance by the court in the case at bar was legally correct.

It is also to be observed that the contract in question was executed in Pennsylvania, in which jurisdiction interest from the date of maturity of each coupon is allowed. *Philadelphia and Reading Railroad* v. *Smith,* 105 *Pa. St.* 195; *Id.* v. *Fidelity Co.,* 105 *Id.* 216.

The cases cited by the appellant to support its contention do not militate against the conclusion we have reached, since they were cases in which the question of the legal status of detached coupons was not an issue.

A question of practice and procedure only remains. The notice to strike out was based upon the ground that the answer was sham and frivolous. The learned justice in the Supreme Court struck it out on the ground that it was frivolous. In this we conceive he was legally correct, since a pleading cannot under the common law rules applicable thereto, be possessed of both legal infirmities at the same time. At common law a plea was considered sham when it was palpably or inherently false, and from the plain or conceded facts in the case must have been known to the party interposing it to be false. Such plea, says Chitty, "Has always been considered a very culpable abuse of justice, and has often been censured and set aside, with costs." 1 *Chit. Pl.* 542; 1 *Tidd Pr.* 611; 2 *Bouv.* 680.

A frivolous plea need not be false, but is palpably insufficient as a legal defence to the action; and hence legally insubstantial or frivolous, and therefore presumably interposed for the purpose of delay. 2 *Bouv.* 853.

Under the common law practice in New York, and the Supreme Court rules, a plea might be condemned as either palpably false (sham) or frivolous, and could be struck

out upon either ground, but was never summarily dealt with upon both grounds. 12 *Wend.* (*N. Y.*) 196; 1 *Burrill Prac.* 180; 21 *R. C. L.* 452, and cases cited.

The judgment under review will therefore be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, BERGEN, MINTURN, KALISCH, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, GARDNER, ACKERSON, VAN BUSKIRK, JJ. 14.

*For reversal*—None.