80 N.J. Super. 97 (1963)
193 A.2d 146
PETER SMALL, PLAINTIFF,
v.
MARTIN M. SCHUNCKE, ET AL., DEFENDANTS.
MARTIN M. SCHUNCKE, DEFENDANT AND THIRD-PARTY PLAINTIFF-RESPONDENT,
v.
PENNSYLVANIA THRESHERMEN & FARMERS' MUTUAL CASUALTY INSURANCE COMPANY, THIRD-PARTY DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 29, 1963.
Decided July 18, 1963.
*98 Before Judges GOLDMANN, FREUND and FOLEY.
Mr. Edward M. Gurry argued the cause for appellant (Messrs. Gurry and Conlan, attorneys).
Mr. John R. Kingsland argued the cause for respondent (Mr. John W. Taylor, attorney).
The opinion of the court was delivered by FOLEY, J.A.D.
Third-party defendant Pennsylvania Threshermen & Farmers' Mutual Casualty Insurance Company (Threshermen) appeals from a summary judgment entered in the Law Division, adjudicating that third-party plaintiff Schuncke was entitled to the coverage provided by the omnibus clause contained in an automobile liability insurance policy which Threshermen had issued to Herbert B. Weidel. The omnibus clause was of standard form and provided in pertinent part that coverage under the policy *99 was extended to "* * * any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or such spouse or with the permission of either."
The basic facts are not in material dispute. Weidel, who resided in Baltimore, Maryland, and was the owner of the insured vehicle, entered a Baltimore hospital on June 2, 1957 for treatment. He drove his car to the hospital, leaving it in the parking area. A day or two later his nephew Michael Wagner visited him at the hospital. Wagner was a sailor, home on leave from the Navy. Weidel asked Wagner if he would mind using Weidel's car for certain specified purposes  to drive Mrs. Weidel to and from the hospital, to take her shopping if necessary, to deliver some wedding presents which were in Weidel's vehicle, and to pick up Weidel's pay check. Wagner agreed, and did in fact serve his uncle in the manner requested from that time until June 7, 1957. Wagner did not at any time request that he be given permission to use the car for his personal purposes. Weidel, on the other hand, never expressly prohibited such use by his nephew. In short, the matter of personal use by Wagner never came up, and so there was no occasion to discuss it.
On the evening of Friday, June 7, 1957, Wagner, in furtherance of the purposes specified by Weidel, drove his mother (Weidel's sister) to the Weidel residence where she acted as a baby sitter for Mrs. Weidel while Wagner drove the latter to see her husband in the hospital, as he had done on several preceding nights. After the visit he drove Mrs. Weidel home and then took his mother to her home. On the way he saw Schuncke, a friend and neighbor for many years. After taking his mother home Wagner drove around to see Schuncke. The two young men then drove to a nearby restaurant where they met two girls. After a "couple hours," during which they consumed soft drinks, they took the girls home.
*100 Wagner and Schuncke then drove to a restaurant or tavern where they had two or three bottles, or glasses, of beer. While they were there Schuncke suggested that they drive to New York City for the week end. Wagner agreed. After stopping at their respective homes for clothing they started for New York. En route they picked up five hitch-hikers. Along the way Schuncke took over the driving of the vehicle and Wagner fell asleep. Travelling northerly on the New Jersey Turnpike at or near Newark the car was in violent collision with another vehicle approaching from the rear.
Subsequently, actions were instituted in behalf of the passengers in Weidel's automobile, against Weidel, Schuncke, and the owner and driver of the other car. Threshermen declined to defend the action against Schuncke upon the ground that he did not fall within the coverage provided by the Weidel policy. Schuncke had coverage under an automobile liability policy issued by the Liberty Mutual Insurance Company (Liberty) to his father. Both the Weidel and Schuncke policies had identical policy limits of $10,000/$20,000. Although the fact is not clearly stated, it seems evident from the issues framing this case that the Liberty coverage did not become effective until the Threshermen coverage was exhausted, providing Schuncke was entitled to coverage under the omnibus clause of the Threshermen policy.
Later the actions brought by the plaintiffs were consolidated, and Schuncke was permitted to file a third-party complaint against Threshermen in which he claimed coverage under the Threshermen policy and demanded judgment in his favor for "all sums as may be found due against him * * * together with all costs incurred by him in defense of said actions [plaintiffs'] * * *." The consolidated cases of plaintiffs were settled in the course of trial. Under the terms of the settlement Liberty contributed the sum of $20,000 to the group of settlements. Threshermen paid nothing either in behalf of Weidel or as a third-party defendant. It was agreed that the sum of $20,000 was a fair *101 and reasonable contribution. Thereafter, the third-party action was litigated, with the result already noted. While Schuncke is named as the third-party plaintiff, the real party in interest, of course, is Liberty.
In its brief Threshermen concedes that if Wagner was a permittee in the use of the Weidel car, and thus had coverage under the Threshermen policy, Schuncke also had coverage thereunder as a second permittee.
The Law Division judge grounded the summary judgment upon the holding that the case was controlled by Costanzo v. Pennsylvania Threshermen, etc., Ins. Co., 30 N.J. 262 (1959) and Matits v. Nationwide Mutual Ins. Co., 33 N.J. 488 (1960). Costanzo, supra, which was decided prior to the adoption of the "initial permission" rule by Matits, is clearly inapplicable to the facts here presented.
In Costanzo permission was given by the insured to his son to use the insured automobile around a Navy base where the son was stationed, and for the purpose of going back and forth to his home. The court concluded that the permission included authority to delegate operation of the vehicle to a sailor who was more familiar than the son with roads they were traversing on their way back to the Navy base after a dance. Pointing out that the son was stationed at a place far distant from his home, that the father had another car and apparently did not need the use of the one loaned to his son, and that the father could reasonably expect that his son during the long journey to and from his home would on occasion share the driving with others, the court went on to say:
"While away from home the son had the unsupervised control of the car for an extended period of time. He used it for social engagements and permitted others to drive it. Neither he nor his father testified that this was done contrary to the wishes of the father. We believe that the circumstances under which this car was entrusted to Sturgill, Jr., were such as to make it reasonable to say that the driving of the car by another while Sturgill, Jr., was riding therein was impliedly countenanced by Sturgill, Sr." (30 N.J., at p. 270)
*102 By no line of reasoning may it be said, in view of the limited purposes for which possession of the Weidel vehicle was turned over to Wagner, that Weidel could be deemed to have clothed Wagner with vicarious authority to permit Schuncke to drive the vehicle from Baltimore to New York. There was no question in Costanzo, as there is here, of the right of the original permittee to coverage if he had been driving at the time of the accident, since in Costanzo the use, as distinguished from the operation, accorded with the permission. Cf. Indemnity Ins. Co., etc., v. Metropolitan Cas. Ins. Co. of N.Y., 33 N.J. 507 (1960); Baesler v. Globe Indemnity Co., 33 N.J. 148 (1960); Standard Accident Ins. Co. v. Allstate Ins. Co., 72 N.J. Super. 402 (App. Div. 1962); Allstate Ins. Co. v. Fidelity & Cas. Co. of N.Y., 73 N.J. Super. 407 (App. Div. 1962), certification denied 37 N.J. 522 (1962). See also Cohen & Cohen, "Automobile Liability Insurance: Public Policy and the Omnibus Clause in New Jersey," 15 Rutg. L. Rev. 155 (1961).
Thus, if the judgment under review is to be affirmed, it must be upon the holding that the use of the car by Wagner fell within the sweep of the "initial permission" rule laid down in Matits, supra. There the husband of the insured gave a neighbor permission to use the insured automobile to visit her mother. The neighbor visited her mother, and then went to a tavern and restaurant and from there to a bar, then returned to the tavern, then paid a second visit to the bar, then returned a third time to the tavern and while returning home was involved in an accident.
The Supreme Court came to grips for the first time with the question of which of three streams of judicial thinking it should follow: (1) the liberal or so-called "initial permission" rule, that if a person has permission to use an automobile in the first instance, any subsequent use while it remains in his possession, though not within the contemplation of the parties, is a permissive use within the terms of the omnibus clause; (2) the moderate or "minor deviation" rule, that the permittee is covered under the *103 omnibus clause so long as his deviation from the permissive use is minor in nature; (3) the strict or "conversion" rule, that any deviation from the time, place or purpose specified by the person granting permission is sufficient to take the permittee outside the coverage of the omnibus clause. See 33 N.J., at pp. 492-493; see also 7 Appleman, Insurance Law and Practice, §§ 4366-4368 (1942). In this landmark decision the court chose to accept and approve the initial permission rule, saying:
"Accordingly, we hold that if a person is given permission to use a motor vehicle in the first instance, any subsequent use short of theft or the like while it remains in his possession, though not within the contemplation of the parties, is a permissive use within the terms of a standard omnibus clause in an automobile liability insurance policy." (33 N.J., at pp. 496-497; emphasis added)
While in recent years a number of cases involving the interpretation of the omnibus clause have been decided by our courts, substantially all have dealt with "second permittee" situations in which the crucial question was whether the use to which the vehicle was being put at the time of the accident by the "second permittee" was within the permitted use granted to the "first permittee." Such was the case in Costanzo, Baesler, Allstate v. Fidelity, and Standard v. Allstate, supra. Only in Hanover Ins. Co. v. Franke, 75 N.J. Super. 68 (App. Div. 1962), was operation and use by an "original permittee" considered. There, however, the use by an employee of his employer's truck, although personal, was found to have been permitted since it was a necessary incident of his employment duties.
We are thus called upon to construe in the light of the facts of this case, the Matits edict that where permission to use the vehicle is given, any subsequent use short of theft or the like is permissive.
In doing so we must initially examine the circumstances leading to Wagner's obtaining possession of the Weidel car. As distinguished from the Matits, Allstate and Standard cases, Weidel did not loan the car to Wagner for his personal *104 use. On the contrary, with Wagner's consent Weidel constituted Wagner as his agent to perform certain stated services exclusively in Weidel's behalf. It is beyond debate that had Wagner been involved in an accident while taking Mrs. Weidel to visit her husband at the hospital or in pursuance of other duties assigned to him by his uncle, Weidel would have been answerable under the doctrine of respondeat superior.
Thus, in a true sense the "use" of the car arising from the arrangement between Weidel and Wagner was a "use" by the owner, which in the utilitarian sense of the word "use" did not comprehend personal "use" by Wagner. In short, Wagner received possession of the vehicle, but Weidel retained its use. Thus viewed, Wagner's act in driving to New York constituted an original taking of Weidel's vehicle without permission  express or inferential.
If, however, the voluntary delivery of "possession," in the circumstances of this case, should be equated to a permitted use by Wagner for his own purposes, the question then arises of whether his taking the car to New York was an act short of "theft or the like." Quite plainly, the appropriation of the vehicle was not a theft, since larceny includes as a requisite element that the taker intend to permanently deprive the owner of the chattel. There is no reason to believe that Wagner so intended. But in qualifying "theft" by "or the like," the court evidently had in mind acts short of theft which would vitiate the permission granted.
We take "or the like" in this context to mean acts of like effect upon the owner's right of dominion over the vehicle, and upon the owner's interest (if any) in the achievement of the purposes for which the permission was granted in the first place. Neither in Matits nor in the cited cases which followed it, was there any inconsistency between the use of the loaned vehicle and the personal purposes for which the owner intended to use it. But here, as we have said, the basic reason for delivery of possession to Wagner was to enable him daily to perform stated services in Weidel's *105 behalf. The impossibility of Wagner's driving to New York for a week end and continuing to transport Mrs. Weidel on her daily visits to the hospital is self-evident. In and of itself the trip completely frustrated the objectives sought to be accomplished by Weidel in placing his nephew in possession of the car, and effectively deprived the owner of the use of his car.
We conclude, therefore, that Wagner's gross excursion from the "use" for which he received possession of the vehicle terminated such "use," amounted to an original unlawful taking tantamount in its effect upon Weidel's property rights to a "theft or the like," and so excluded both Wagner and Schuncke from coverage under the policy.
This disposition of the case makes it unnecessary for us to decide third-party defendant's second point, relating to the date on which interest should attach to the judgment.
Reverse.