PETER SMALL, PLAINTIFF, v. MARTIN M. SCHUNCKE, *ET AL.*, DEFENDANTS.

MARTIN M. SCHUNCKE, DEFENDANT AND THIRD-PARTY PLAINTIFF-APPELLANT, v. PENNSYLVANIA THRESHER-MEN & FARMERS' MUTUAL CASUALTY INSURANCE COMPANY, THIRD-PARTY DEFENDANT-RESPONDENT.

Argued April 21, 1964—Decided June 1, 1964.

*Mr. John R. Kingsland* argued the cause for the third-party plaintiff-appellant (*Mr. John W. Taylor,* attorney).

*Mr. Edward M. Gurry* argued the cause for the third-party defendant-respondent (*Messrs. Gurry & Conlan,* attorneys; *Mr. Edward M. Gurry* on the brief).

The opinion of the court was delivered by

PROCTOR, J. This case concerns coverage under the omnibus clause of an automobile liability insurance policy. The policy was issued by the third-party defendant, Pennsylvania Threshermen & Farmers' Mutual Casualty Insurance Company (Pennsylvania), to Herbert B. Weidel of Baltimore, Maryland, and covered his automobile, which was involved in a collision on June 8, 1957. The omnibus clause was of standard form and provided in pertinent part that coverage under the policy was extended to the named insured, his spouse, and "any person while using the automobile * * *, provided the actual use of the automobile is by the named insured or such spouse or with the permission of either."

The facts are not in material dispute. Weidel entered a hospital in Baltimore on June 2, 1957, for treatment of poison ivy. A day or two later, he requested his nephew, Michael Wagner, also of Baltimore, who was home on leave from the Navy, to use his car to take Mrs. Weidel to and from the hospital to visit him, to take her shopping and to do other errands for him. Wagner agreed and Weidel gave him the keys to the car. Wagner did not ask whether he could use the car for his own purposes, nor did Weidel tell him not to. In short, the matter was not discussed. Wagner used the car for several days to do the errands requested of him and parked it each evening in front of his home. On Friday night, June 7, after driving Mrs. Weidel from the hospital to her home, he picked up a friend, Martin Schuncke, the third-party plaintiff herein, and the two spent several hours together drinking coffee and later a few beers. They decided to drive to New York for the week-end and *en route* they picked up five hitchhikers. Along the way Schuncke took over the driving. Early the next morning they were involved in a collision with a truck near Newark on the New Jersey Turnpike, which resulted in the death of one of the passengers and injuries to others.

Actions in negligence were instituted against Weidel, Schuncke, and the owner and driver of the truck. Pennsylvania notified Schuncke that it was not extending coverage to

him under Weidel's policy or defending him because he was not using the car with the permission of the named insured. Liberty Mutual Insurance Company (Liberty), which had issued a policy on a vehicle owned by Schuncke's father, defended the action for Schuncke and obtained an order joining Pennsylvania as a third-party defendant in the consolidated negligence actions. The third-party action, now before this Court, was severed from the negligence actions which came on for trial in November 1958. After several days of trial the negligence actions were settled. Liberty and Pennsylvania, although disagreeing on the question of which carrier should extend coverage, had agreed in advance of the settlement that the $20,000 limit under either policy should be contributed on behalf of defendant Schuncke toward the settlement of the negligence actions. Liberty agreed to pay the $20,000 required by the settlement. No discussion was had at that time as to the payment of interest on the sum in the event that the third-party action was determined against Pennsylvania. Liberty paid $20,000 to the plaintiffs on December 16, 1958. Though Schuncke is denominated the third-party plaintiff, of course, Liberty is the real party in interest.

On February 27, 1962 the Superior Court, Law Division, granted summary judgment for Schuncke in the third-party action, directing that Pennsylvania was obligated to extend the coverage of the Weidel policy to Schuncke. On motion to settle the form of judgment, an order was entered on July 19, 1962, which required Pennsylvania to pay to Liberty the sum of $20,000 plus 6% interest and costs, interest to run from December 16, 1958. On Pennsylvania's appeal to the Appellate Division, the judgment of the Law Division was reversed on the ground that Schuncke was not covered by the omnibus clause in the Pennsylvania policy. 80 *N. J. Super.* 97 (1963). We granted Schuncke's petition for certification. 41 *N. J.* 199 (1963).

The parties have briefed and argued the case on the assumption that New Jersey law should be applied to the issues here involved. We accept their position and treat the matter as

one arising under New Jersey law. Further, Pennsylvania concedes that if Wagner was a covered permittee under the omnibus clause at the time of the collision, Schuncke also had coverage thereunder as a second permittee.

Pennsylvania contends that the decisions of this Court in *Matits v. Nationwide Mutual Ins. Co.*, 33 N. J. 488 (1960), and *Indemnity Ins. Co. of North America v. Metropolitan Cas. Ins. Co. of N. Y.*, 33 N. J. 507 (1960), establish the guidelines to be followed in the resolution of the issue here presented and further contends that those cases were properly applied by the Appellate Division when it held that Schuncke, at the time of the collision, was not using the car with the permission of the named insured.

The *Matits* case adopted for New Jersey the "initial permission" rule to be used in determining whether coverage is available to persons other than the named insured under a standard omnibus clause in a liability insurance policy. The rule was stated to be: "[I]f a person is given permission to use a motor vehicle in the first instance, any subsequent use short of theft or the like while it remains in his possession, though not within the contemplation of the parties, is a permissive use within the terms of a standard omnibus clause in an automobile liability insurance policy." 33 N. J., at p. 496. In that case we rejected the "minor deviation" rule that the permittee is covered under the omnibus clause so long as his deviation from the permissive use is minor in nature. We also rejected the "conversion" rule that any deviation from the time, place or purpose specified by the person granting permission takes the permittee outside coverage of the clause. *Ibid.* We pointed out that the rejected rules make coverage turn on the scope of permission in the first instance, render coverage uncertain in many cases, foster litigation as to the existence or extent of deviations, and inhibit achievement of the legislative goal of providing certain and maximum coverage to effectuate the policy of encouraging collectibility of damages wrongfully inflicted in the operation of motor vehicles. *Id.*, at pp. 495, 496.

█ Pennsylvania contends that the opinion in *Indemnity Ins. Co.*, which was decided on the same day as *Matits*, circumscribes the rule there announced and requires consideration of the purpose for which the permission was given in the first instance and a finding that the use of the vehicle at the time of the accident was reasonably related to the "actual use" for which permission was initially given. We disagree. The *Indemnity Ins. Co.* case did not involve an application of the initial permission rule. There was in that case no subsequent use which deviated in any way from the permitted use. The only question presented was whether omnibus coverage extends to a person who is expressly prohibited by the named insured from operating the latter's car where the car is being used at the time with the permission of the named insured. In answering that question affirmatively, we distinguished between permission to operate, immaterial to coverage under the omnibus clause, and permission to use, the controlling factor in such cases. Were we to construe the *Indemnity Ins. Co.* case as requiring a consideration of the scope of the permitted use as Pennsylvania suggests, we would clearly thwart our expressed purposes for adopting the initial permission rule announced in *Matits* and destroy the certainty in the law achieved through its adoption.

Under the initial permission rule only two questions must be answered to determine coverage. Was there permission to use the car initially? Did the subsequent use, while possession was retained, constitute "theft or the like?"

█ In the present case the Appellate Division held that since the purpose for which Wagner was given the car was solely for Weidel's benefit, the "use" of the car was never given to Wagner. Use was retained by Weidel and only possession was transferred to Wagner. 80 *N. J. Super.*, at *p.* 104. We believe that this construction of the word "use" is too narrow. Whether permission to use is granted for a purpose which will benefit the owner, the permittee, or both is immaterial under the initial permission rule, which is not concerned with the scope of use for which permission is

granted. See the cases cited in 12 *Couch, Insurance 2d* § 45:468 (1964). In *Matits* we relied on *Rikowski v. Fidelity & Casualty Co.*, 117 *N. J. L.* 407 (*E. & A.* 1937), as an early indication in New Jersey of the intention to adopt the initial permission rule. 33 *N. J.*, at *p.* 495. In *Rikowski* a chauffeur drove his employer to a department store. There was no parking place available nearby, and the employer told the chauffeur to find a parking place and return in an hour. An accident occurred about a half hour later some two miles from the store while the chauffeur was driving some friends to their home. The court stated (at *p.* 411) that the chauffeur "had permission, in the first instance, to take and to use the car," and that he was a covered permittee under the omnibus clause, though clearly under the facts the owner intended the use to be solely for his own benefit. While in that case the policy in question extended coverage to persons granted permission "to operate" the car, the court did not distinguish between operation and use. And as we stated in *Indemnity Ins. Co., supra*, "One who operates a car uses it." 33 *N. J.*, at *p.* 513. We believe that transfer of possession by the named insured with the intention that the car shall be operated by the transferee on public highways is a grant of permission to use the vehicle within the intendment of an omnibus clause. We hold that Weidel gave Wagner permission to "use" the car when he entrusted the latter with possession and requested that he operate the car to perform the various errands. Accordingly, Wagner and Schuncke are additional insureds under the omnibus clause of Pennsylvania's policy unless their use of the car at the time of the accident constituted "theft or the like."

Quite plainly, the use of the car for the trip to New York did not constitute theft, as there is no suggestion that Wagner intended to deprive the owner permanently of the car. Nor is there any evidence that the use of the car was tantamount to criminal conduct of any kind on the part of Wagner or Schuncke. The initial permission rule as expressed in *Matits* contemplates a situation in which the subsequent use

of a car may be inconsistent with and even frustrate the intention and plans of the person granting permission. And though, as Pennsylvania argues, the trip to New York may have made it impossible for Wagner to perform the requested errands for Weidel, we believe that the use of the car did not amount to conduct akin to theft.

Pennsylvania argues that its policy provides coverage if the "actual use" was with permission and that that phrase has a more limited meaning than the unmodified word "use." It is contended that "actual use" refers to the time of the collision, and that the "actual use" at that time must be that for which permission was granted. The clause, read as a whole, does not require or suggest such a meaning of the adjective "actual" and we believe it should not be so construed. The clause requires only that permission for "actual use" be given, not permssion for any specific purpose, deviation from which would vitiate coverage. We note that the omnibus clause construed in *Matits* required that "actual use" be with the permission of the named insured. 33 *N. J.*, at *p.* 490. The initial permission rule would be wholly inconsistent with the construction of the clause urged by Pennsylvania. Such a construction would call for the adoption of the strict conversion rule which we rejected in *Matits*. The meaning urged by Pennsylvania has been considered and rejected by other courts. See Couch, *op. cit. supra*, § 45:328, and cases cited therein.

For the reasons stated above, we hold that Schuncke was an additional insured under the omnibus clause of Pennsylvania's policy at the time of the collision.

Pennsylvania contends that if Schuncke was entitled to coverage under its policy, as we have held, the trial court nevertheless erred in allowing interest from December 16, 1958, on the $20,000 payment made by Liberty on that day. Interest is in contemplation of law damages for the illegal detention of a legitimate claim or indebtedness. *Fidelity Mut. Life Ins. Co. v. Wilkes-Barre, etc., Co.*, 98 *N. J. L.* 507, 510 (*E. & A.* 1923). And in practice a court

should charge and allow interest in accordance with principles of equity in order to accomplish justice in each particular case. *Jardine Estates, Inc. v. Donna Brook Corp.*, 42 *N. J. Super.* 332, 340 *(App. Div.* 1956). The amount of the settlement paid by Liberty is concededly fair and reasonable, and in accordance with our holding, Pennsylvania was obligated to pay it on December 16, 1958. Liberty has been deprived of the use of this liquidated amount since that time, and Pennsylvania, on the other hand, has had the use of it. Moreover, Liberty has been put to the expense and inconvenience of defending Schuncke and litigating this action to establish Pennsylvania's liability under its policy. We find no error in the trial court's allowance of interest. See *United Deliveries, Inc. v. Norwich, etc. Ltd.*, 133 *N. J. L.* 393 *(E. & A.* 1945).

The judgment of the Appellate Division is reversed, and the judgment of the trial court is reinstated.

HALL, J. (concurring). The court's opinion decides that the holding of *Matits v. Nationwide Mutual Ins. Co.*, 33 *N. J.* 488 (1960), here dictates extension of the car owner's insurance coverage to his nephew's friend who was driving the vehicle at the time of the accident in New Jersey in the course of a week-end junket to New York with the nephew, when the uncle had given the nephew possession of the car so that the latter might do family errands in Baltimore for the former while he was confined to the hospital. This deviation was indeed a much more aggravated one than that in *Matits* and the views expressed in my dissenting opinion there, 33 *N. J.*, at *p.* 498, seem even more pertinent. See also the comprehensive discussion of the field and its difficulties for the judiciary in Cohen and Cohen, "Automobile Liability Insurance: Public Policy and the Omnibus Clause in New Jersey," 15 *Rutgers L. Rev.* 155 (1961). But since the "initial permission" rule —more aptly described as the "hell or high water" doctrine— was settled as the law of this state by *Matits,* I am constrained to join the court's opinion.

HALL, J., concurring in result.

*For reversal* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.