105 N.J. Super. 363 (1969)
252 A.2d 232
RICHARD GRONQUIST AND CARL H. GRONQUIST, PLAINTIFFS,
v.
TRANSIT CASUALTY COMPANY, A CORPORATION OF THE STATE OF MISSOURI, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided April 16, 1969.
*364 Mr. Robert J. Maloof for plaintiffs (Messrs Hein, Smith, Mooney & Berezin, attorneys).
Mr. Walter E. Monaghan for defendant (Messrs. Schneider & Morgan, attorneys).
FULOP, J.S.C.
At the trial of this case the jury was waived and the matter was submitted to the court on a stipulation of facts and legal arguments. The issue presented is whether a passenger in an automobile is an additional insured under the provisions of the omnibus clause of the owner's liability insurance policy.
On January 1, 1961 Arthur Chalenski was the owner of an automobile and the insured named in an automobile liability insurance policy issued by defendant. Chalenski, plaintiff Richard Gronquist, and Barbara Sayko attended a party in Westfield. When leaving the party Richard asked for a ride to his home. Chalenski agreed. Chalenski drove. Miss Sayko sat in the right front seat and Richard sat in the rear. *365 In the course of the trip the car struck a telephone pole, injuring Miss Sayko and Richard. In 1962 Miss Sayko and her father instituted an action in this court against both Chalenski and Richard for damages for her injuries. The complaint alleged the negligence of the driver and also alleged that Richard had negligently caused or contributed to causing the accident by leaning over the back of the front seat and putting the weight of his body on the driver, interfering with his driving.
Defendant Transit defended the action on behalf of Chalenski. It was requested to defend Richard as an additional insured under the Chalenski policy but refused to do so. Richard was a minor without means of his own. His father Carl H. Gronquist provided him with a defense of the action. A crossclaim was asserted against Chalenski on Richard's behalf for his injuries. The jury determined that Chalenski alone had negligently caused the accident. Judgment was entered against Chalenski in favor of Miss Sayko and also in favor of Richard on his crossclaim for $250 and $50 costs. Richard's legal expenses totalled $2,460.05, paid by his father.
This action seeks to recover the legal expenses incurred in defending Richard. Plaintiffs contend that as a passenger in the automobile in which he was being conveyed to his home Richard was using the automobile with the permission of the named insured, within the meaning of the omnibus clause of defendant's policy, and was entitled to be provided a defense.
Defendant denies that Richard was using the automobile within the meaning of the policy. It also contends that the acts charged against Richard exceeded the permission granted to him.
The parties have agreed that $2,360.05 is a fair and reasonable sum incurred for defense of the claim against Richard, exclusive of the cost of prosecuting Richard's affirmative crossclaim.
Under its policy defendant agreed: *366 "* * * To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile.

* * * * * * * *
"* * * defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient; * * *."
The omnibus clause defining the word "insured" reads as follows:
"With respect to the insurance for bodily injury liability and for property damage liability the unqualified word `insured' includes the named insured and, if the named insured is an individual, his spouse if a resident of the same household, and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or such spouse or with the permission of either. * * *"
No New Jersey case directly in point has been cited or found. Plaintiffs cite two Louisiana cases to support their contentions. In Bolton v. North River Ins. Co., 102 So.2d 544 (La. Ct. App. 1958), certiorari denied (June 27, 1958), it was held that a passenger seated in a standing automobile, who negligently closed the door on the hand of one standing outside the vehicle, was an insured within the meaning of the omnibus clause of the automobile liability policy covering the car. The court said:
"In stating that the defendant would be responsible under the omnibus clause of the policy for the negligent act or acts of the passenger, Don Bolton, which might be established on the trial of the case as a proximate cause of the injury and damage to plaintiff, we are agreeing with the contention of counsel for plaintiff that Don Bolton at the time was `using' the motor vehicle under the liberal interpretation required of such clauses in an insurance policy, Pullen v. Employers' Liability Assurance Corp., 230 La. 867, 89 So.2d 373; Spurlock v. Boyce-Harvey Machinery, Inc., La. App., 90 So.2d 417, 422. Also 45 C.J.S. Insurance § 829, p. 902, `The use contemplated *367 in a provision for coverage while an automobile is used with the owner's consent generally is regarded as not limited to physical operation or driving.' (Emph. Added.) Also Sec. 4316 (e), 7 Appleman, `Insurance Law and Practice' pp. 84-85, as supplemented by 1958 pocket part, pg. 25, wherein it states: `The term "use" is the general catch-all of the insuring clause, designed and construed to include all proper uses of the vehicle not falling within one of the previous terms of definition * * *. A person clearly could be using an automobile without operating it personally. So long as "use" as distinguished from operation, is with permission of the named insured, the insurer is liable for any accident.' Also Liberty Mutual Ins. Co. v. Steenberg Construction Co., 8 Cir., 1955, 225 F.2d 294; also the concurring opinion in the case of American Farmers Mutual Automobile Ins. Co. v. Riise, 214 Minn. 6, 8 N.W.2d 18, 19, decided by the Supreme Court of Minnesota. (at p. 547.)
In Cagle v. Playland Amusement, Inc., 202 So.2d 396 (La. Ct. App. 1967), it was held that a security guard at an amusement park, who helped the insured to open his locked car by striking the vent window with his revolver butt, was covered by the owner's policy for liability for injuries to one struck by a bullet negligently discharged from the gun.
In accord with the above cases are St. Paul Fire & Marine Ins. Co. v. Hartford Acc. & Indem. Co., Cal. App., 51 Cal. Rptr. 301 (Cir. Ct. App. 1966); and Industrial Indem. Co. v. Continental Cas. Co., 375 F.2d 183 (10 Cir. 1967).
Defendant cites Commercial Standard Ins. Co. v. New Amsterdam Casualty Co., 272 Ala. 357, 131 So.2d 182 (Ala. Sup. Ct. 1961). In that case a nursery employee placing shrubs in a car was held not to have been using the car within the meaning of the owner's policy when he shut the door on a child's hand. The court held that the loading had been completed and that the subsequent closing of the door was not a use of the automobile. The tortfeasor was not a passenger in the automobile. However, the case is clearly in conflict with the Cagle case, supra. The Alabama court concentrated on the loading provision of the policy and assumed a nonuse without substantial consideration of the matter. The same result was reached on similar facts in Travelers Ins. Co. v. Safeguard Ins. Co., 346 Mass. 622, 195 N.E.2d 86 (Mass. Sup. Jud. Ct. 1964) (grocery store *368 employee who closed car door on customer's fingers was making too remote a "use" of the vehicle to qualify as an additional insured), and Buckeye Union Cas. Co. v. Ill. Nat. Ins. Co., 2 Ohio St.2d 59, 206 N.E.2d 209 (Sup. Ct. 1965) (store employee who slammed trunk lid on customer's head after loading packages was not an additional insured).
In New Jersey the standard omnibus clause here involved is prescribed by the Financial Responsibility Law, R.S. 39:6-46(a). Selected Risks Ins. Co. v. Zullo, 48 N.J. 362 (1966). It has been construed to afford very wide coverage. "Using" the automobile is not confined to operation. Coverage extends to a driver granted permission to operate by the use permittee, even if contrary to the instructions of the named insured. When permission to use an automobile has been granted, no deviation from instructions revokes the permission, short of conversion or theft or the like. Matits v. Nationwide Mutual Ins. Co., 33 N.J. 488 (1960); Indemnity Ins. Co. v. Metropolitan Cas. Ins. Co. of New York, 33 N.J. 507 (1960); Small v. Schuncke, 42 N.J. 407 (1964).
In the Indemnity Insurance case Justice Proctor said by way of dictum: "An automobile is being used, for example, by one riding in it although another is driving." In 45 C.J.S. Insurance § 829, p. 902, it is said that "the `use' of a car has been held to include riding in it by the person to whom permission is given, although the actual driving is done, * * * by another person." See National Union Fire Ins. Co. of Pittsburgh, Pa. v. Bruecks, 179 Neb. 642, 139 N.W.2d 821 (Sup. Ct. 1966); Metcalf v. Hartford Acc. & Ind. Co., 176 Neb. 468, 126 N.W.2d 471 (Sup. Ct. 1964); Maryland Cas. Co. v. Marshbank, 226 F.2d 637 (3 Cir. 1955).
In Boswell v. Travelers Indem. Co., 38 N.J. Super. 599, 606-607 (App. Div. 1956), the court listed definitions of the word "using" or "use" in connection with the provisions of an insurance policy. The word has many meanings. But, as the court pointed out, its meaning must be considered with *369 regard to the setting in which it is employed. In the absence of a special meaning indicated by the context, words must be given their ordinary and natural meaning. Wolf v. Home Ins. Co., 100 N.J. Super. 27, at p. 45 (Law Div. 1968), affirmed o.b. 103 N.J. Super. 357 (App. Div. 1968). The common meaning which appears applicable here is "to employ" or "to make use of." Black's Law Dictionary (4th ed.)
In the ordinary meaning of the words it seems evident that one being driven to his home in an automobile is making use of or using the automobile.
In Maryland Cas. Co. v. Marshbank, supra, the court held:
"* * * The fallacy in the plaintiff's position is that the words `use' and `operation', which it seeks to equate as synonymous, are in this setting words of quite different meaning. For the `use' of an automobile by an individual involves its employment for some purpose or object of the user while its `operation' by him involves his direction and control of its mechanism as its driver for the purpose of propelling it as a vehicle. It is perfectly clear that an automobile is being used by an individual who is traveling in it regardless of whether it is being operated by him or by another."
It may be argued that although the words of the policy cover a mere passenger, the intent was to cover only one who has possession of or directs or controls the operation of the vehicle. (Compare the construction of similar language in statutes providing that the owner shall be liable for injuries caused by an automobile while being used by another with the owner's permission. Souza v. Corti, 22 Cal.2d 464, 139 P.2d 645, 147 A.L.R. 861 (Sup. Ct. 1943) and annotation.) But the history of the omnibus clause shows that an earlier form specified as an insured "any person while riding in or legally operating the vehicle" with the permission of the named insured. Osborn v. New Amsterdam Cas. Co., 111 N.J.L. 358 (E. & A. 1933); Asnis v. Bankers' Indemnity Ins. Co., 110 N.J.L. 134 (E. & A. 1933). The substitution of the word "using" was clearly intended to enlarge the scope of the coverage to include riding in, operating, and any other use of the vehicle. The fact that "riding *370 in" was formerly specified makes manifest that its inclusion in the present form of the provision is within the intent as well as the literal meaning of the language used.
There is no significance, material to the present issue, in the words "actual use" in the proviso of the omnibus clause. Actual means in fact and not constructively. Here, there is no question of constructive use by Richard. He was physically using the vehicle to go to his home although he was not operating it. Under the construction of this omnibus clause in the Matits and Indemnity Ins. Co. cases, supra, no greater significance is given to "actual use" than "use." See Metcalf v. Hartford Acc. & Indem. Co., 176 Neb. 468, 126 N.W.2d 471 (Sup. Ct. 1964); Williams v. United Services Auto Ass'n, 250 F. Supp. 502 (N.D. Miss. 1965); 45 C.J.S. Insurance § 829, p. 902; Annotation, 160 A.L.R. 1200-1201; Appleman, Insurance Law & Practice, § 4354, p. 241.
The contention that by allegedly leaning over the front seat and interfering with the operation of the automobile defendant exceeded the permission of the owner and therefore lost insurance coverage is fully answered by the "initial permission" rule which is the law of this State. See Small v. Schuncke, supra.
Even aside from the initial permission rule, Richard's alleged conduct in this case did not deviate from permission to use the car. He was riding in the car as and where permitted. The acts alleged would constitute negligence. It is rare indeed that negligent conduct is authorized. If negligent conduct were deemed to withdraw insurance coverage, the policy would be nugatory. The very liability insured against would defeat the coverage. In fact, the jury found that Richard had not committed the wrongful acts alleged. The policy provides for the defense of groundless, false and fraudulent claims as well as truthful ones. The right to a defense arises upon the basis of the allegations of the complaint. Danek v. Hommer, 28 N.J. Super. 68, 77 (App. Div. 1953), affirmed 15 N.J. 573 (1954); Ohio Cas. *371 Ins. Co. v. Flanagin, 44 N.J. 504 (1965). Defendant was obligated to defend the action against Richard. Having refused on request to do so, it breached its policy and forced the incurring of the expense for Richard's defense. Richard would be entitled to recover that expense. New Jersey Mfrs. Ind. Ins. Co. v. United States Cas. Co., 91 N.J. Super. 404 (App. Div. 1966). Since the cost of the defense was advanced by Richard's father, Carl H. Gronquist, on behalf of his minor son, the father is entitled to be subrogated to his son's cause of action. George M. Brewster & Son, Inc. v. Catalytic Const. Co., 17 N.J. 20 (1954).
Judgment will be entered in favor of the plaintiff Carl H. Gronquist and against defendant for $2,360.05 and costs.