163 N.J. Super. 1 (1978)
394 A.2d 129
SANJAY MEHTA, A MINOR BY HIS GUARDIAN AD LITEM, SUBHASH MEHTA AND SUNITA MEHTA, INDIVIDUALLY, PLAINTIFFS-RESPONDENTS,
v.
JOHNS-MANVILLE PRODUCTS CORP., C.I.T. SERVICE LEASING CORP., AND NORMAN CHASE, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued September 26, 1978.
Decided October 6, 1978.
*2 Before Judges LORA, MICHELS and LARNER.
Mr. William J. Cunnane argued the cause for appellants (Mr. James D. Butler, attorney).
Mr. James O. DeLancey argued the cause for respondents (Mr. Thomas H. Dilts, attorney).
PER CURIAM.
Defendants appeal from an order adding interest to the settlement of their personal injury claims totalling $125,000.
On April 3, 1972 plaintiffs Sanjay Mehta, a minor, then 2 1/2 years old, and his guardian ad litem and father Subhash Mehta and mother Sunida Mehta, residents of Montreal, Canada, were injured in an automobile accident near Plattsburg, New York. An action bearing Docket No. L-21032-72 *3 was instituted in their behalf against defendants in Somerset County.
On July 6 and 7, 1976 settlement discussions were conducted which culminated in a total settlement of $125,000, $40,000 of which was allocated to the infant, Sanjay, $50,000 to Sunida Mehta and $35,000 to Subhash Mehta. Expenses and attorneys' fees were to be paid out of the father's $35,000; the infant Sanjay's $40,000 was to be placed under the control of the Surrogate of Somerset County to be released to him at age 18 together with its accumulated interest. Upon petitioning the court and with the court's approval, the infant's necessaries, medical treatments and special schooling due to the injury could be paid for out of these funds if the parents were unable to provide them.
Mr. and Mrs. Mehta as well as Sanjay (then five) were examined on the record as to the accident and their resulting injuries. They affirmatively stated that the settlement was voluntary and it released all claims against defendants, including the medical bills incurred in Canada. The infant's settlement was contingent upon the submission of a current neurological report and, following its receipt on August 11, 1976, a judgment approving said infant's settlement was entered on September 7, 1976.
Plaintiffs' counsel had them sign their releases on July 7, 1976 and on said date took them to the surrogate's office to execute the papers required for Sanjay, but they refused to do so. On September 10, 1976 counsel wrote to plaintiffs' Canadian counsel and asked him to advise the Mehtas of the necessity of their coming to the surrogate's office so that Sanjay's money could be secured and that this would not prevent any future application to have the money held by the surrogate released to Canada if law could be uncovered allowing this to be done. The Mehtas did not come to New Jersey for that purpose.
The releases, dated July 7, 1976 and signed by Sunida and Subhash Mehta, together with the judgment were forwarded by plaintiffs' counsel to defendants' attorney on *4 October 29, 1976. The letter of transmittal advised that the warrant for satisfaction regarding the infant's allowance would be forthcoming at a later date.
Thereafter, on November 3, 1976, plaintiffs filed a notice of motion to amend the final judgment entered on September 7, 1976 insofar as it required the monies of the infant to be deposited with the Somerset County Surrogate so as to provide that (1) the question of who was to receive the infant's monies and how and where they were to be invested was to be determined by the laws of Quebec; (2) the child's "tutor" under Quebec law be authorized to execute the warrant for satisfaction of judgment and receive the monies to be invested pursuant to the laws of Quebec; (3) the money be invested in Canada rather than deposited with the Surrogate of Somerset County so it could earn over the course of the child's infancy $66,000 more than it could earn in New Jersey; (4) the particular recommended investments, and (5) the parents be qualified to act as special guardians.
At the hearing on November 19, 1976 counsel for defendants voiced no objection but emphasized the need for his clients to be protected against the Quebec liens and the possibility of further liability arising out of the disbursement of the infant's funds. The motion was granted and the judgment was amended accordingly on December 6, 1976. The order provided that defendants, upon receipt of proper authority issued by the Province of Quebec designating the person or persons entitled to receive said monies in behalf of the infant pursuant to the law of Quebec, were to forthwith disburse the same to plaintiffs' attorney and the person or persons so designated.
In the meantime, on November 29, 1976, defendants' counsel returned the releases to plaintiffs' attorneys with a request that they be revised to reflect the correct spelling of Sunida's name, to include the Traveler's Insurance Company as a releasee, to add a clause providing for an express release of all medical, hospital and physicians' liens of the Province of Quebec, and to incorporate by reference the *5 transcript of the July 7, 1976 settlement proceedings before the trial court.
On December 15, 1976 defendants' attorney wrote to plaintiffs' attorneys requesting the properly completed releases, appropriate certification from Quebec and satisfaction of judgment so that the settlement checks could issue. Upon receipt of settlement drafts from the carrier, defendants' attorney's office on January 13, 1977 telephoned plaintiffs' attorneys' office to advise that the checks were available and were told that the forwarding attorney in Montreal had been telephoned on January 12, 1977 to follow up on the required closing papers. While plaintiffs' attorneys, under date of January 31, 1977, forwarded appropriate closing papers regarding the infant, the releases submitted still did not include the requested release of Quebec liens and the incorporation by reference of the settlement proceedings. Included in the record is a March 15, 1977 letter from defendants' attorney to plaintiffs' attorneys alluding to a request of that date by plaintiffs' attorneys to withhold the Sanjay check until all three checks could be sent at once to the Mehtas for execution. Properly executed releases of the Mehtas containing the requested language were received on March 30, 1977. All three drafts were on that date forwarded to plaintiffs' attorneys.
On August 24, 1977 plaintiffs moved for an order directing payment of interest on the settlement proceeds from July 7, 1976, the date of settlement, to March 30, 1977, the date payment was received. The trial judge ordered defendants pay interest at the rate of 8% to plaintiffs Subhash Mehta and Sunita Mehta from July 7, 1976 to March 30, 1977 and to Sanjay Mehta on the judgment from September 7, 1976 to March 30, 1977.
R. 4:42-11 provides in pertinent part:
(a) Rate. Judgments, awards and orders for the payment of money and taxed costs shall bear simple interest on the amount of the award at 8% per annum from the date of entry, except as otherwise ordered by the court.
*6 Section (b), which is not here involved, applies to prejudgment interest in tort actions.
The factual complex of this case as outlined above clearly demonstrates that the delay in payment from the time of settlement until March 1977 was not due to any fault or delay on the part of defendants or their insurance company. The trial judge made such a finding but apparently bottomed his decision to award interest on the single thesis that the carrier had the use of the money during the period involved.
In Kotzian v. Barr, 152 N.J. Super. 561, 566 (App. Div. 1977), certif. granted 76 N.J. 241 (1978), where prejudgment interest was the issue, we stated that the authorization of R. 4:42-11(b) for the judicial suspension of interest extends only to those cases where an award of interest would neither advance the aim of early settlement nor constitute fair compensation to a plaintiff for money withheld and used or presumptively used by a defendant. Although we are here not dealing with prejudgment interest we are of the view that this is such an "exceptional case" and that the "policy, spirit and intent of the rule are patently inapposite to the circumstances at hand." Kotzian, supra at 565. There is no indication of any conduct on the part of defendants or their carrier which could in any way be construed as frustrating the aim of early settlement. Although plaintiffs too were without fault in this respect, the delays encountered in consummating the settlement were due to plaintiffs' difficulties in getting proper documentation by way of correct releases, release of Canadian liens, warrants for satisfaction, Canadian orders of guardianship, transfers of funds to Canada, and investment thereof.
Traditionally, payment of interest has been controlled by equitable considerations to accomplish justice in each particular case. Small v. Schuncke, 42 N.J. 407, 416 (1964). On balance, it is our conclusion that under the circumstances of this case it is inequitable to compel the payment of *7 interest by defendants for a delay which can not be attributed to them in any respect whatsoever.
The order of the Law Division dated October 25, 1977 directing payment of interest is reversed.