STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY

v.

The LIBERTY MUTUAL INSURANCE
COMPANY, Stephen Douglas McDaniel,
Lester B. McDaniel and Imogene E. Mc-
Daniel, Melvin N. Frith, Teresa Anne
Frith, Charles Gibson Williams.

Civ. A. No. 64-C-26-R.

United States District Court
W. D. Virginia,
Roanoke Division.

Jan. 28, 1965.

———◆———

John L. Walker, Jr., Woods, Rogers, Muse & Walker, Roanoke, Va., for State Farm Mutual Auto. Ins. Co.

John H. Locke, Gentry, Locke & Rakes, Roanoke, Va., for Liberty Mutual Ins. Company.

W. H. Jolly, Kime and Jolly, Salem, Va., for Charles Gibson Williams.

Joyce & Stone, Martinsville, Va., and William G. Ammen, Roanoke, Va., guardian ad litem, for Stephen Douglas McDaniel.

R. Roy Rush, Roanoke, Va., attorney and guardian ad litem, for Teresa Ann Frith.

DALTON, Chief Judge.

This is a declaratory judgment action commenced by State Farm Mutual Automobile Insurance Company (hereinafter called "State Farm") against the Liberty Mutual Insurance Company (hereinafter called "Liberty Mutual") and others. The action arose out of an automobile accident which occurred in Martinsville, Virginia on November 16, 1963, involving a 1956 Ford automobile owned by Melvin N. Frith and being operated at the time of the accident by Stephen O. McDaniel, and an automobile being operated by Charles G. Williams. Williams has instituted an action in the Circuit Court of the City of Martinsville against Stephen McDaniel seeking fifty thousand dollars ($50,000) in damages for alleged injuries sustained in the accident. The instant case was brought to determine the insurance coverage available to Stephen McDaniel.

It appears that Liberty Mutual held in force a policy of automobile liability insurance naming Melvin N. Frith and Lois Frith as the insured owners of the 1956 Ford automobile involved here, together with other automobiles. Lester B. and Imogene McDaniel were the named insureds in a policy of automobile liability insurance issued and held in force by State Farm. Stephen McDaniel was their minor son and a member of the McDaniel household.

On the evening of November 16, 1963 Teresa Anne Frith asked the permission of her father, Melvin Frith, to use the 1956 Ford automobile so that she and several young friends might visit a teenage recreation center in Martinsville and go to a drive-in restaurant for refreshments afterwards. Teresa had only recently procured her operator's license, and thus, had only restricted use of the automobile. She asked permission of her parents each time she used the car and was under standing instructions not to let anyone else drive it.

She obtained permission to use the car on the evening in question for limited purposes and states that she fully understood that she was not to let anyone else drive the car. Later that evening the Frith car struck the car driven by Williams while being driven by Stephen McDaniel, a fifteen year old unlicensed driver who had obtained his "learner's permit" only three days prior to the accident.

State Farm admits that it must provide coverage for Stephen McDaniel under the policy it has issued to the parents of the boy. However, its policy provides only excess insurance with respect to non-owned automobiles and thus State Farm contends that Liberty Mutual, insuring the Frith car, must provide primary coverage here. This brings us to a consideration of the coverage of the Liberty Mutual policy.

According to counsel for Liberty Mutual the omnibus clause of their new revised policy, incorporated into the instant policy, operates to limit the coverage afforded in situations such as that presently before the court. With respect to an owned automobile the policy insures, in addition to the name insured, "any other person using such automobile with the ed his actual operation * * * is with permission of the named insured, providin the scope of such permission".

Most of the pertinent Virginia cases have construed the old standard form clause which defined as an insured under the omnibus clause, "any other person using the automobile, provided the actual use thereof is with the permission of the named insured". The Virginia courts have freely given effect to this limitation in coverage and have, in each case, held that a user of the automobile may not be an additional insured under the omnibus clause unless it is shown that permission was expressly or impliedly given for his use of the automobile by the named insured. Aetna v. Czoka, 200 Va. 385, 105 S.E.2d 869 (1958); State Farm Mut. Auto. Ins. Co. v. Cook, 186 Va. 658, 43 S.E.2d 863, 5 A.L.R.2d 594 (1947). Thus, in United States Casualty Co. v.

Bain, 191 Va. 717, 62 S.E.2d 814 (1951) where an owner had loaned his truck to a man to be used for a personal errand and requested that it be returned at a fixed time and the man after departing with a friend had left the truck and failed to return at the appointed time; and when the permittee had not returned on time the friend was proceeding to drive the truck back to the owner when a collision occurred, the Supreme Court of Appeals held that the friend was not covered by the policy in that there was no permission granted him for use of the truck by the owner. See also, Farmer v. Fidelity & Cas. Co., 249 F.2d 185 (4th Cir. 1957) and Hopson v. Shelby Mut. Cas. Co., 203 F.2d 434 (4th Cir. 1953). In both of these Fourth Circuit cases the permittee was given the use of an automobile and instructed not to let anyone else drive. In both instances an accident occurred while third persons were driving and it was held that there was no coverage under the owners' insurance policy for lack of permission.

Clearly, there was no express permission given in this case. Teresa Frith was given the use of the automobile by her parents for the limited purpose of going to a recreation center and then to one or more drive-in restaurants which were frequented by her friends. She stated that her father had always told her on allowing her permission to use the car that she was not to let anyone else drive it. Both Teresa and her father testified that they did not specifically recall whether or not the instruction was reiterated on the night in question but that it was clearly understood between them that no one else was to drive the car at any time when she obtained permission to use it.

Teresa left her home on the evening of November 16, 1963, picked up two girl friends, and proceeded toward the recreation center. There is a minor conflict in the accounts as to exactly what occurred then but in all the accounts it appears that the girls' destination and purpose remained within the scope of the permission contemplated by the parents.

They may have stopped by the recreation center for a short time, or by the Ayer's Drive-In, or both. Shortly afterwards, while Teresa was driving the Frith car occupied in addition only by her two girl friends, in the presence of Johnny Coulson and Stephen McDaniel who were riding in an auto driven by the former, Teresa momentarily lost control of the car. She took her eyes off the road for a moment and the car went off the surface of the roadway on to the gravel shoulder at the right side. According to the testimony of the two boys, the car very nearly went into the river. However, Teresa regained control immediately and returned the car to the pavement with no further incident. This occurred on the Dye Plant Road near Ayer's Drive-In. The parties returned to Ayer's Drive-In but there is again conflict in the accounts as to exactly what occurred. Under the most plausible view of the evidence the girls returned immediately to the drive-in and pulled in there. The boys followed and pulled in along side, left their car and began talking with the girls. There is evidence that Johnny Coulson "fussed" at Teresa for her negligent behavior in driving the car. Teresa also testified that she had not felt particularly well that evening. For that reason, together with the "fussing" and the incident on Dye Plant Road itself she testified that she became "nervous and upset". She asked Stephen to remain with her, at which time Johnny Coulson got in his car and drove off. McDaniel got into the car and they started to leave with Teresa driving.

There is some evidence that Teresa was not able to operate the clutch in the automobile properly and that when Teresa started to back out of the drive-in this, together with her unsettled state, caused her to stall the engine in the car several times. Upon this occurrence she asked Stephen to drive the car back to the recreation center for her.

Thus, the parties left Ayer's Drive-In in the Frith car occupied by Teresa, the two girl friends, and driven by Stephen McDaniel. Shortly thereafter the collision with the Williams car occurred as McDaniel drove the Frith car out from a gasoline station. McDaniel stated in his deposition that he started into the roadway with the car engaged in "second gear" but that the clutch pedal stayed on the floorboard of the car and failed to disengage. He stated that when he reached down with his foot to pull the pedal up the car lurched forward into the street, spun around and struck the Williams automobile.

It is clear that in Virginia implied permission may arise from a course of conduct between the parties, Coureas v. Allstate Ins. Co., 198 Va. 77, 92 S.E.2d 378 (1956), and that the owner's permission may be implied in circumstances where he does not know the identity of the driver. Robinson v. Fidelity Cas. Co., 190 Va. 368, 57 S.E.2d 93 (1950). In this case, however, there is no course of dealings between the owner and the driver from which such permission may be implied. In fact, there was an express direction by the named insured not to let anyone other than his daughter drive.

The principal contention made on behalf of State Farm is that since the purposes for which the vehicle were used during the evening did at all times remain within the scope of the permission granted by the owner, coverage would be extended under the omnibus clause of the Liberty Mutual policy regardless of the fact that the operator was not a permitted one. The contention as stated by complainant is: "There is no condition in the Liberty Mutual policy requiring that the automobile must be *driven* or *operated* with permission; it merely requires that the vehicle must be *used* with permission." (Complainant's brief, page 5), based on Loffler v. Boston Insurance Company, 120 A.2d 691 (Mun.Ct.App. D.C.1956), for the proposition that "[S]o long as the *use* as distinguished from the *operation* is with the permission of the insured, the insurer is liable." State Farm also cites Allstate Ins. Co. v. Fidelity Cas. Co., 73 N.J.Super. 407, 180 A.2d 168 (N.J.Super.Ct.1962) as support for

this proposition. In the latter case, an accident occurred while a third party was driving after the owner had admonished his son, the original permittee, not to allow anyone else to drive. The Court held that coverage was extended under the omnibus clause of the owner's policy because the vehicle was being used for the purpose for which it was given to the named insured's son. However, the omnibus clause involved there, like the medical payments clause in Loffler, supra, included as an insured any "person *using* such automobile, provided the actual *use* thereof is with the permission of the named insured."

I do not believe that the present state of the law in Virginia as to the scope of omnibus coverage would allow me to adopt the rationale of these cases even under this older clause. The reasoning of United States Casualty Co. v. Bain which involved a third party carrying out the owner's express directions to the permittee as to the use to be made of the vehicle indicates that it is extremely unlikely that the Virginia court would follow these other cases in such a situation.

Furthermore, it seems that after cases such as the above began appearing, Liberty Mutual revised its standard policy to expressly limit the omnibus coverage to include "any * * * person using such automobile with the permission of named insured, *provided his actual operation* * * * is within the scope of such permission." (Emphasis added) Thus, contrary to the contention made on behalf of State Farm, the Liberty Mutual policy does specifically require that the vehicle be *operated*, as opposed to used, with the permission of the named insured in order to extend coverage. There may well be doubt as to the effect

of this clause in other cases. However, in light of its obvious intended effect on the rationale of the cases preceding its inclusion in the standard form policy which found coverage wherever the use of the vehicle was within the scope of permission regardless of who was operating it, this Court is not inclined to follow that reasoning.

State Farm further contends that the facts indicate the existence of an emergency situation which gives rise to an implied permission to substitute another driver. It argues that Teresa became physically incapacitated to drive the car. However, it would seem that there is no real emergency in this case. In some versions of the incident Teresa appears undisturbed. In others, with no greater credibility, she is reported to have been visibly upset. In either event, however, Teresa's incapacitation could not have been too serious, since when Stephen McDaniel was asked to drive, the parties were returning to the recreation center and continuing their evening's entertainment without regard to Teresa's condition.

In conclusion, from looking at the available evidence in the case, there is nothing upon which any permission for Stephen McDaniel to operate the car could be based. The Court finds therefore that Stephen McDaniel is not covered as an insured under the policy issued by Liberty Mutual. The Court also finds that the coverage under the State Farm policy is applicable and available to Stephen McDaniel and that State Farm is bound to defend and indemnify him up to the applicable policy for any claims arising out of the accident in question.

An order will be entered carrying this opinion into effect.